PAEPCKE-LEICHT LUMBER COMPANY *v.* COLLINS.

Opinion delivered March 2, 1908.

1. MASTER—CONCLUSIVENESS OF FINDINGS.—Findings of fact by a master are entitled to the same conclusiveness as the verdict of a jury. (Page 419.)

2. COTENANT—LIABILITY FOR TIMBER CUT.—Where a tenant in common in good faith cut all the timber from the land owned in common, believ-

ing that it was the sole owner thereof, it will be liable, in a suit at the instance of the cotenant, for the value of the timber in the tree at the time it was cut, with interest. (Page 421.)

Appeal from Chicot Chancery Court; *James C. Norman,* Chancellor; reversed.

*F. M. Rogers,* for appellant.

When this case was reversed on a former appeal, the order of this court was to ascertain the damages sustained by plaintiffs in cutting the timber on the land involved since the 4th June, 1901. 82 Ark. 1. An appeal in chancery is a trial *de novo.* 13 Ark. 344. And this has been followed to the present time. See Crawford's Dig. 150; 2 *Id.* 70. The exceptions filed to the report of the master appointed to ascertain the damages sustained by the plaintiff by the cutting of timber on the land involved should have been overruled. The master heard the witnesses testify, and was in a position to pass on their credibility. The measure of damages, when the trespass was in good faith upon a supposed right or claim or by error, is the value of the property of the time it is taken. 49 Miss. 236; 106 U. S. 432. The measure of damages for trespass in cutting timber is the value of trees as they stood before the trespass. 36 Barb. 644; 58 Penn. 246; 43 N. C. 60; 17 A. & E. Ency. (2d Ed.), 696.

*F. M. Rogers, Wm. C. Gilbert,* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

Where a master is appointed by consent, his findings are as binding as those of a jury. 74 Ark. 338; 155 U. S. 636; 144 U. S. 585; 145 *Id.* 132; 129 *Id.* 512. In so far there is any testimony consistent with his finding, it must be treated as unassailable. 3 Dall. 321; 12 How. 60; 9 Wall. 125; 18 *Id.* 237; 98 U. S. 440. A tenant in common has a right to improve the joint estate, even against the will of his co-tenant. 21 Ark. 540. In an action by one tenant in common to restrain his co-tenant from cutting timber on land held by them jointly, the defendant should only be restrained from cutting more than one half of the trees. 37 So. 1018; 8 Term R. 145; Freeman on Cotenancy and Part., sec. 251; 63 Ark. 11. When a case is once decided by this court, its decision becomes the law of the case. 10 Ark. 187; 29 *Id.* 185; 52 *Id.* 480; 81 *Id.* 440; 20 Cal. 388.

In trespass the measure of damages is dependent upon the motive of the trespasser. If he acted in good faith, the plaintiff is restricted to compensatory damages. 39 Ark. 387; 53 *Id.* 10; 66 *Id.* 562; 50 *Id.* 177; 67 *Id.* 371; 106 U. S. 434; 101 *Id.* 51; 117 Fed. 481; 22 S. C. 87; 43 N. Y. S. 115; 47 Atl. 269; 41 Penn. 296; 6 Hill, 425; 21 Barb. 92; 23 Conn. 523; 38 Me. 174; 60 Atl. 643; 3 Ad. & Ell. (N. S.),' 440; 13 Nev. 62. Since the chancery court of Chicot County had decreed that the land in controversy belonged to appellant, it is fair to presume that it acted in good faith in cutting the timber thereon. See Kirby's Digest, § 7795. When any party shall cut trees on the land of another, the party injured shall recover treble damages (Kirby's Digest, § 7976); but if at the trial it shall appear that the party cutting the timber had reason to believe that the land on which the trespass is alleged to have been made belonged to him, then the injured party shall recover single damages only. *Id.* § 7978.

*W. G. Streett, H. E. Cook* and *Baldy Vinson,* for appellees.

Appellee's measure of the timber cut from the land was correct. 69 Ark. 304. They used the measure provided by law for such purpose. Kirby's Digest, § 8009. Appellees are entitled to one-half the profits on the timber taken from the lands owned by them jointly with appellants. This principle was adopted in 10 C. E. Gr. 173; 12 *Id.* 82; 37 N. J. Eq. 114; 25 Conn. 137; 55 Penn. 407; 1 Tiffany on Mod. Law Real Prop. sec. 169; Kirby's Digest, § 6295. One co-tenant is a trustee for the other in making profits out of the joint estate. 22 Ga. 131; 68 Amer. D. 484. He should therefore pay his co-tenant the actual profits made. 2 Mylne & K. 655; Story, Eq. 445, 465. See, also, 33 N. C. 391; 53 Am. Dec. 416. Appellee's ownership in the trees could not be divested by their co-tenant cutting them and converting them into lumber. 56 S. W. 969; 49 L. R. A. 416. Until an allotment has been made, a co-tenant has no right to sell the product of the estate and appropriate the profits entirely to himself. 112 Ia. 210; 83 N. W. 963. When he does, the co-tenant may maintain an action for an accounting. 170 N. Y. 120; 62 N. E. 1074. Appellees are not restricted to actual damages to the freehold. Damages include profits. 59

Pac. 857; 47 L. R. A. 540. The term "rents and profits" is equivalent to "damages." 5 Greenl. 199. If one tenant cuts timber on the land, and sells it, the co-tenants are entitled to their share of the money so received. 28 L. R. A. 829.

BATTLE, J. The history of this litigation is summed up in *Collins* v. *Paepcke-Leicht Lumber Company*, 82 Ark. 1, as follows: "On the 7th day of March, 1901, James E. Collins and others instituted an action against Paepcke-Leicht Lumber Company in the Chicot Chancery Court to recover certain lands and for $10,000 as damages for timber cut. On the 4th day of June, 1901, upon final hearing, the court dismissed the complaint for want of equity, and plaintiffs appealed to this court. On the 28th of January, 1905, this court reversed the decree of the chancery court as to half interest in the lands, and affirmed as to the other, and the cause was 'remanded to said chancery court with directions to enter a decree for appellants for an undivided half of the lands in controversy and for further proceedings to be therein had in accordance with the opinion herein delivered.' On the 15th of April, 1905, plaintiffs filed a motion in the chancery court, in which they stated that the defendant had before and since the institution of this action wrongfully cut and removed timber from the lands in controversy, of great value, and asked that a master be appointed to ascertain the amount and value of such timber, and for other relief; but it did not state that any of the timber was cut after the 4th day of June, 1901, when the final decree was rendered by the chancery court. Upon motion the chancery court rendered a decree in accordance with the mandate of this court, and ordered that plaintiffs be taxed with one-half the costs in the case, and the defendant with the other half. The plaintiffs then asked this court to issue the writ of mandamus, requiring the chancellor to take cognizance of plaintiff's motion, and to appoint a master to take an account of the timber cut. This court denied the writ. Plaintiffs then appealed from the refusal of the chancery court to appoint a master as required by their motion, and from the judgment for costs."

Upon the last appeal this court rendered the following judgment: "The decree of the court as to costs is reversed; and the cause is, therefore, remanded with directions to the

court to allow plaintiffs to amend their motion or supplemental complaint, if they are so advised, and, when properly amended, to take such proceedings as may be proper to ascertain the damages sustained by them from the cutting of timber on the land involved in this action since the 4th of June, 1901, and for judgment therefor, and to render a decree in favor of the plaintiffs against the defendant for costs already incurred, and for further proceedings appropriate and necessary and not inconsistent with the opinion of this court in this case."

We omit to mention so much of the proceedings had in the Chicot Chancery Court after the cause was remanded the last time as is not in controversy on this appeal.

After the cause was remanded, the plaintiffs amended their motion or supplemental complaint by alleging that, subsequent to the 4th day of June, 1901, Paepcke-Leicht Lumber Company had cut and converted to its own use 23,675,114 feet of timber; and that the market value thereof, after paying cost of manufacture, was $7 per thousand or $165,729.79; and asked judgment for one-half thereof, $82,862.88, with interest from the date of the removal of the timber.

Paepcke-Leicht Lumber Company, answering, denied it had cut and removed 23,675,114 feet subsequent to the 4th day of June, 1901, but admitted that it had cut and removed in 1902 3,704,599 feet of the value of $1.00 per thousand; in 1903, 1,566,275 feet of the value of $1.25 per thousand; in 1904, 1,143,481 feet of the value of $1.50 per thousand. It alleged that it and its predecessors in title had paid all taxes on the land from 1882 to 1906, and asked for a judgment for one-half thereof and interest thereon, and that it be offset against its indebtedness for timber, and for partition of the land.

At the November (1906) term the chancery court, by consent of all parties in open court, appointed R. D. Chotard master to ascertain, among other things, the amount and value of timber cut and removed from the land involved in this cause "by Paepcke-Leicht Lumber Company from and after the 7th day of March, 1901, to present date, and to compute interest thereon at the rate of six per cent. per annum from the date of removal of each lot of timber to the date of filing of report." (This order was made prior to the last order of this court.

in this cause, which was made on the 11th of February, 1907.)

The master examined eighteen witnesses, and filed their depositions and his report. He shows by his report that the Paepcke-Leicht Lumber Company, after the 4th of June, 1901, cut and removed from the land 6,310,133 feet, and that the value of the timber cut in 1901 was one dollar and fifty cents a thousand, and that cut in 1902 was two dollars a thousand, and that cut in 1903 and 1904 was two dollars and fifty cents a thousand; and the aggregate value of the timber so cut was $13,487.63.

Plaintiffs excepted to the report, which the court sustained, and found that the Lumber Company, after the 4th day of June, 1901, cut and removed from the land 20,675,114 feet of timber, and realized by sale thereof a net profit of six dollars per thousand, and is accountable to plaintiffs for one-half of the same, which amounts to $62,025.34, and rendered a decree accordingly.

Chotard was appointed master to ascertain the amount and value of timber cut and removed by the Lumber Company from Island 82 after the 7th day of March, 1901. For this purpose he took the depositions of eighteen witnesses, heard them testify, had this means of judging their credibility and weighing their testimony in addition to reading it, and had access to the records to which they referred. The master having these superior opportunities to ascertain the facts, the law, as this court held in *Greenhaw v. Combs,* 74 Ark. 338, gives to his findings of facts the same conclusiveness as is given to the verdict of a jury or the findings of fact by a court sitting as a jury.

The testimony of witnesses is sufficient to sustain his findings. N. F. Allen, the foreman of Camp No. 1, which was composed of the men engaged in cutting and removing timber from the land involved (which is known and designated as Island 82) for the Lumber Company, from June 4th, 1901, to the 14th of August of the same year, and who scaled the same, testified that in that time 523,425 feet were cut and taken off. Green, a witness, who was in the employment of the same company, testified that he kept a record of the logs cut from these lands (Island 82) and delivered to the company at its mill at Greenville, Mississippi, and that was delivered to it between the second day of

August, 1901, and February 20th, 1902, being various amounts, which amounted to 751,225 in the aggregate. C. E. Cansey testified that he was a member of the firm of Cansey Brothers, and that they were engaged in the latter part of the year 1901 and in the year 1902 in cutting and removing timber from "Island 82" for the Lumber Company, and delivered to it as follows: February 28, 1902, 222,671 feet, March 13, 169,719 feet, March 31st, 87,792 feet and 570,485 feet, April 18th, 172,003 feet, and April 30, 1902, 58,176 feet, amounting in the aggregate to 1,277,846 feet; and further testified that during this time there was no other person engaged in cutting and removing timber from these lands. A. N. Cox testified that he was engaged in the latter part of the year 1902 and in the years 1903-4 in getting out timber from Island 82 for the Lumber Company; that he commenced work about the first of December, 1902, and quit sometime in May, 1904, and in this time cut and removed 3,718,302 feet; and that no other person was engaged in cutting timber from the island during that time. According to the testimony of these witnesses, Allen, Green, Cansey and A. N. Cox, there was cut and removed from the island while they were there 6,072,089 feet of timber. The time they were there included all the time after the 4th of June, 1901, until the Lumber Company quit cutting in May, 1904, except a time not exceeding six months. The evidence shows that timber was cut during this time, but as to the amount is not clear and certain. The master finds that there was cut and removed from the island after 4th of June, 1901, 6,310,133 feet, which, deducting the 6,072,089 feet from it, leaves 238,044 feet cut in the few months, which is not an unreasonable estimate. This is the quantity cut as shown by the testimony of witnesses. But appellant, the Lumber Company, admits in its pleadings that it cut and removed in the years 1902-3-4, 6,414,335 feet—3,704,579 feet in 1902, 1,566,275 feet in 1903, and 1,143,481 in 1904. This much is undisputed by the parties, as shown by their pleadings.

Opposed to this evidence, we have the testimony of D. B. Browner. With a Doyle stick and a tape line he undertook to ascertain the number of feet of timber cut on the Island. Measuring the diameter of the stumps he found on the Island and the distance from the stumps to the tops of the trees sup-

posed to be cut from the stumps and the diameter of the larger end of the tree tops, he estimated that 27,595,081 feet of timber was cut on the Island.  How much was cut in the different years his testimony does not show.  How much was cut by parties other than appellant and its employees the evidence does not disclose.  It does show that Phillips & Barsley cut, but it does not sufficiently show that there were not others.  Browner's testimony was conjectural, unsatisfactory, and opposed to the decided preponderance of the evidence.

The nearest and most reliable approximation to the quantity of timber cut by appellant and its employees after the 4th of June, 1901, is 6,414,335 feet.  What compensation are appellees entitled to for the loss of one-half of it?  The island was chiefly valuable for the timber growing on it, and on account of it the land was purchased and held.  In taking a part of it and converting it into lumber appellant did not become liable to its co-tenants for one-half of its time, capital, labor, and skill expended in so doing.  It was an equal owner with them, and entitled to possession, and cannot be punished as a trespasser by the loss of one-half of its time, labor, capital and skill.  To avoid such results, equity will set apart to a co-tenant the part of the land he has improved and greatly enhanced in value, in a partition of the same, at its value without the improvement, if without the improvement it could have been equally divided by assigning such part to the tenant who made the improvement.  *Drennen* v. *Walker,* 21 Ark. 540; *Dunavant* v. *Fields,* 68 Ark. 541.  Equity avoids such consequences where it can be without injustice to the co-tenant.  Why should it not do so?  What right has one co-tenant to the labor, time, capital and skill of another when he can recover his own without it?  In this case appellees were owners of only one-half of the timber cut.  That is all the appellant has taken from them.  It acted in good faith, believing that it was the owner of all the timber, and all it is liable for is one-half of the value of the timber in the tree at the time it was cut and interest.  *McDearman* v. *McClure,* 31 Ark. 563; *Walling* v. *Burroughs,* 8 Iredell, Eq. 60; *Patureau* v. *McCardle,* 10 So. 782; *Coleman's Appeal,* 62 Pa. St. 278; *Pico* v. *Columbet,* 12 Cal. 421; *Knowles* v. *Harris,* 5 R. I. 402.

The appellant should be charged with the value of the timber at the time it was cut as the same was found by the master.

So much of the decree of the chancery court as fixes the liability of the appellant for timber cut is reversed, and the cause is remanded with directions to the court to render a decree in accordance with this opinion.