McVEIGH *v.* CHICAGO MILL & LUMBER COMPANY.

Opinion delivered November 14, 1910.

1. MASTER—EFFECT OF REFERENCE.—Where the record in a chancery case shows that a special master was appointed by agreement of the parties, without stating what was referred to him, it will be inferred that the court's order intended to invest him with the powers and to charge him with the duties prescribed by Kirby's Digest, § 6333, which are to take testimony and state an account between the parties according to the facts. (Page 489.)

2. APPEAL AND ERROR—CONCLUSIVENESS OF CONSENT MASTER'S FINDINGS.— Findings of fact of a consent master are as conclusive as the verdict of a jury or the findings of fact by a court sitting as a jury. (Page 489.)

3. SAME—CONCLUSIVENESS OF MASTER'S FINDINGS OF LAW.—Where questions of law were not expressly referred to a consent master, the parties are not bound by his conclusions of law. (Page 489.)

4. MASTER—REFERENCE—QUESTIONS OF LAW.—Where the parties consented to the appointment of a master, but did not expressly consent that questions of law should be referred to him for decision, it is the duty of the court to determine such questions. (Page 489.)

5. ABSTRACTS OF TITLE—CONSTRUCTION OF CONTRACT.—Under a contract whereby plaintiff, undertaking to abstract the title to defendant's lands, agreed to give a complete transcript of all special acts of Congress, or of the State, plaintiff was not required to abstract the act of Congress of September 28, 1850, granting swamp lands to the States, nor the act of Congress donating internal improvement lands, nor the several statutes of this State curing defective conveyances and acknowledgments. (Page 490.)

6. SAME—CONSTRUCTION OF CONTRACT.—Under a contract requiring plaintiff to make a complete transcript of special acts, he is not entitled to charge for a summary of a special act. (Page 490.)

7. SAME—CONSTRUCTION OF CONTRACT.—Under a contract requiring the plaintiff to abstract all matters affecting vitally or historically the title to defendant's lands, and fixing the charge therefor, plaintiff was not required to abstract the minutes of the St. Francis Levee Board, nor the delinquent lists of the levee tax collectors, since the decrees of the chancery court foreclosing the lien of the levee tax were conclusive of all matters adjudicated therein. (Page 491.)

8. SAME—CHARGE FOR TRANSFERS.—Under a contract whereby an abstracter of titles was entitled to charge for each "transfer" of land, the abstracter is entitled to charge, as for separate transfers, for each selection and approval of swamp lands, for the patent to the State, for the entry in the State land office of the patent to individuals; so also for a contract to convey, as well as for the deed executed pursuant thereto. (Page 491.)

9. SAME—CONSTRUCTION OF CONTRACT.—Where plaintiff prepared the contract under which he sought to charge for abstracting "tax forfeitures," the contract should be construed against him, and should not be held to include all antecedent steps with reference to the assessment of taxes. (Page 491.)

10. SAME—CHARGE FOR TRANSFERS.—Under a contract whereby plaintiff was to transcribe tax deeds, but to charge for them as transfers of title, regardless of the number of pages used in copying them, plaintiff was not entitled to charge by the page for copying such tax deeds. (Page 492.)

11. SAME—CONSTRUCTION OF CONTRACT.—Under a contract which provided for the preparation of abstracts of title of "all decrees, orders of court, tax forfeitures, and miscellaneous matters appearing in

each and every abstract, of record or on file, affecting vitally or historically, the title to the land embraced therein," the abstracter was not entitled to charge for abstracting records which did not vitally or historically affect the title to the land. (Page 492.)

12. SAME—CORRECTION OF INACCURACIES.—Where an abstracter offered to correct inaccuracies in his abstracts as soon as his attention was called thereto, and still offers to do so, he should not be charged, as against his claim for compensation, with the expense of having such corrections made by others. (Page 492.)

Appeal from Mississippi Chancery Court, Chickasawba District; *Edward D. Robertson,* Chancellor; reversed.

*Allen Hughes,* for appellant.

1. The contents of the abstracts are to be judged by the terms of the contract. While there is much in the abstracts that is not indispensable, and would not appear in the ordinary abstract, yet they are what the appellee wanted and contracted for. The contract is a reasonable one, and appellee should not escape payment for the work done because subsequent events have lessened the need of information so detailed and complete.

2. Appellee is bound by the interpretation placed upon the contract by the parties themselves in the conferences and negotiations between its attorney and McVeigh, resulting in the latter agreeing to reduce his gross charge for the work 7½ per cent., appellee in coming to such agreement necessarily acceding to his contention that the contents of the abstracts were in accordance with the contract. 95 U. S. 269; 46 Ark. 131; 52 Ark. 65; 55 Ark. 418. Moreover, there was a complete ratification of the work, in that appellee's attorney, seeing what was going into the abstracts and the manner in which the work was being done, made no objections at the time. Story on Agency, § 244; 83 Ark. 446. The agreement with Gilbert amounted to a compromise and settlement of the controversies between the parties. 8 Cyc. 501; 137 U. S. 78, 85; 47 Ark. 335; 75 Ark. 266.

3. Each separate transaction, separately of record, affecting the title, constitutes a transfer within the meaning of the contract. Anderson's Law Dict., 55 N. Y. 22; 36 Conn. 429.

*W. C. Gilbert, Charles T. Coleman* and *Hawthorne & Hawthorne,* for appellee.

1. The findings of the master as to all facts where there was evidence to support them are conclusive. The appointment

of the master by the parties themselves in vacation, without any reservation, conferred upon him full power to pass upon and construe the contract and upon all questions arising in the case. 129 U. S. 512; 74 Ark. 338; 85 Ark. 414; 155 U. S. 636; 144 U. S. 585; 145 U. S. 132; 92 Ark. 359. Appellee is not estopped from questioning the abstracts or the amount charged for the work. There is nothing in the record to show that either party treated the examination made by Mr. Gilbert as an acceptance or approval of the abstracts or of the manner in which they were made. If appellant McVeigh was relying upon an approval, or ratification, of his work, undoubtedly he would have mentioned it in his correspondence. 53 Ark. 201; 46 Ark. 131; 52 Ark. 65; 55 Ark. 418; 95 U. S. 269; 15 Ark. 319; 13 Ark. 217; 82 Ark. 367; 36 Ark. 114.

2. By "per transfer" is meant that where lands have been transferred from one person to another, the appellant should be paid 66⅔ cents "per transfer," without regard to the number of pages used in furnishing that information.

3. The words "tax forfeitures" mean, not proceedings culminating in tax sales, as contended by appellant, but a record of the sale alone, either to the State or to an individual. 3 Words & Phrases, 2899; 3 Kan, 364-5; Kirby's Digest, § 4833.

4. The Swamp Land Act is a general law, not a special act. 72 Ark. 195; 75 Ark. 120; 7 Words & Phrases, 6577; 5 Nev. 111. That it is a general law, the courts take judicial notice. 99 Ind. 63; 126 Ind. 398. The act creating the St. Francis Levee District is also a general law, of which the courts take judicial notice. 42 Ark. 592; 20 Ark. 204; 6 Ark. 123; 10 Ark. 423; 36 Ark. 663; 23 Ark. 387; 16 Cyc. 891.

McCULLOCH, C. J. Defendant, Chicago Mill & Lumber Company, owned lands in eastern Arkansas, and employed plaintiff McVeigh to make abstracts of title. They entered into a written contract concerning the matter, dated February 10, 1903, which writing was prepared by McVeigh in accordance with proposals previously made by him to defendant and accepted by the latter. That portion of the contract which is material to this controversy reads as follows:

"That said party of the first part, in consideration of the payments, and upon the conditions herein expressed, upon his part agrees:

"1.   To prepare for said party of the second part complete and accurate abstracts of title to all the lands owned by said party of the second part, lying, being and situate in the counties of Craighead, Poinsett and Mississippi, in the State of Arkansas, at and for the sum of sixty-six and two-thirds (66⅔) cents per transfer, for each and every transfer appearing in each and every abstract, and sixty-six and two-thirds cents per page, or fraction thereof for all decrees, orders of court, tax forfeitures, and miscellaneous matters appearing in each and every abstract, of record or on file, affecting vitally or historically the title to the lands traced therein, each and every section, part of section or tract of land to be abstracted separately and independently of all others, according to its independent chain of title, provided, that no abstract of title shall trace the title to more than one section of land.

"2.   That such compiled data shall include all matters of record in the general land office of the United States Government, at Washington, D. C., the register of the land office of the United States Government, at Little Rock, Arkansas, and the Commissioner of State Land Office, at Little Rock, Arkansas, as well as all matters of record or on file in the counties above mentioned.

"3.   That said first party shall give a complete transcript of all decrees, orders of court, or documents on file of whatever nature (as well as all special acts of Congress, or the State Legislature), including all tax deeds, provided, that this is not to be construed to mean and include ordinary deeds, mortgages and similar conveyances; and shall append to each deed, mortgage or other instrument, such full, complete and accurate notes and memoranda as may be necessary to a proper explanation and understanding of same, as well, also, to all decrees or miscellaneous documents, when, in his judgment, same as may appear necessary. * * *

"10.   For all of above the said party of the second part, on its part, hereby agrees to pay to the said party of the first part, upon the final completion and delivery of said above-described work, the sum of sixty-six and two-thirds cents per transfer or page for same as more particularly described and set out in paragraph number 1 (first), it being agreed that the

plan of the work contemplates the abstracting of each parcel or tract of land separately and independently of the others, and to be paid for at the said rate for each transfer or page contained in each and every one of said abstracts."

Plaintiff McVeigh proceeded with the work of preparing the abstracts, and during the progress thereof defendant advanced to him the sum of $9,000 on the price. Before the completion and delivery of the abstracts, the parties entered into a further agreement with reference to a reduction of the contract price. This is evidenced by a letter of McVeigh to the defendant, dated September 26, 1904, as follows:

"I beg to confirm to you what I have already stated to your Mr. Gilbert, that, in consideration of your having made advances to me in the past to be credited to you on account of our contract of February 10, 1903, and of your agreement to advance me the further sum of $1,500, as follows: $500 on account of September, $400 October 1, $400 November 1, and $200 December 1, which advances are likewise to be credited to your account, I have agreed to give you a discount of 7½ per cent. on the gross amount of your bill."

Further advances were thereafter made by defendant, pursuant to this agreement. McVeigh completed the abstracts and delivered them to the defendant and rendered a bill for the service, claiming payment for 36,083 transfers and pages, amounting, at the contract price, to $24,055.33. Payment was refused, and plaintiff and his assignee instituted this action against defendant in the circuit court of Mississippi County to recover the amount alleged to be due for said service according to the contract price, after deducting 7½ per cent. from the gross amount and the sum of $9,000 advanced, leaving a balance of $13,251.10 claimed to be due and unpaid.

Defendant answered the complaint, disputing the amount of the account, and alleging in substance that McVeigh had not complied with the contract; that the abstracts were incorrectly and improperly prepared and contained thousands of pages of useless, immaterial and irrelevant matter not covered by the contract, and that the same were grossly padded for the purpose of increasing plaintiff's claim for the service. These objections are set forth in detail in the answer. An additional credit of

$539.50 is also claimed over and above the sum of $9,000, being for a draft alleged to have been paid for plaintiff. The answer contained a motion to transfer the cause to the chancery court and for reference to a master to take proof and state an account between the parties.

The case was transferred to the chancery court, and the following order of reference is found in the record, which was entered at the October term, 1907: "The agreement of counsel for the appointment of Basil Baker, Esq., as special master in this cause, is filed, and the appointment of said master, made in vacation, is by the court confirmed." There is no prior order in the record concerning the reference to a master, and the agreement of counsel mentioned in the order of the court is not in the record.

The special master took testimony adduced by the respective parties, and made his report to the court, finding that, after eliminating duplicates found in the abstracts, they contained 24,274 pages, and that 18,037 pages were not chargeable under the contract. He stated the account as follows:

| | Pages | |
|---|---|---|
| Number of pages furnished by McVeigh ----- | | 34,274 |
| Deduct | Pages | |
| Swamp land grants copied ------------------ | 610 | |
| Act creating St. Francis Levee District ----1,446 | | |
| Curative acts ----------------------------- | 912 | |
| Internal improvement act ------------------ | 32 | |
| Donation act ------------------------------ | 89 | |
| Minutes of St. Francis Levee Board ------3,289 | | |
| Transfers --------------------------------2,115 | | |
| Tax forfeitures --------------------------4,786 | | |
| Tax deeds --------------------------------- | 456 | |
| Overdue tax items ------------------------4,441 | | 18,176 |
| | | 16,098 |
| Add. | | |
| Errors (corrected in second report) --------- | 139 | |
| Abstracts delivered but not produced --------- | 312 | 451 |
| Total number of pages to be paid for ------------16,549 | | |

#### Amounts.

| | | |
|---|---|---|
| 16,549 pages at 66⅔ cents | | $11,032.67 |
| Discount, 7½ per cent. | $ 227.45 | |
| Advances | 9,539.55 | 10,367.00 |

| | | |
|---|---|---|
| Amount due McVeigh | | $   665.67 |
| Cost of correcting abstracts | $1,520.00 | |
| Amount due McVeigh | 665.67 | |

Amount overpaid by company _____$ 854.33

Plaintiff filed exceptions to the master's report and findings, some of which were sustained and some overruled. The court restated the account as follows:

Number of pages for which plaintiff is entitled to charge, 28,000

| Deduct | Pages | |
|---|---|---|
| Transfers | 2,115 | |
| Tax deeds | 456 | |
| Curative acts | 914 | |
| Levee board donation | 89 | 3,574 |

|  |  | 24,426 |
|---|---|---|

#### Amounts.

| | | |
|---|---|---|
| 24,426 pages at 66⅔ cents per page | | $16,284.00 |
| Discounts 7½ per cent. | $1,221.30 | |
| Advances | 9,539.50 | 10,760.80 |

Amount due McVeigh _____$ 5,523.20

The court also decided that McVeigh, having offered to correct the errors found in the abstracts, no deduction should be made on that account. A decree was rendered in favor of plaintiff in the sum of $5,523.20, and both sides appealed to this court.

Plaintiff contends that while the work of preparing the abstracts was in progress, and after some of them were complete, so that the matter contained therein could be easily seen, defendant's agent and attorney examined them with considerable care and made no objection thereto, but, on the contrary, while defendant's said attorney was in possession of full knowledge of what the abstracts contained, the new agreement was

entered into for reduction, or for discount of 7½ per cent. on the original contract price in consideration of the advances already made and to be. made by defendant. Testimony was adduced on both sides directed to this contention, and the special master stated his findings and conclusions on this issue as follows:

"I find there have been inserted in many of these abstracts matters which were not contemplated in the execution of the contract, and that the defendant through its agents is not shown to have known that such matters were inserted in the abstracts, and that neither Mr. Gilbert, Mr. Wilms nor Mr. Beckham could have known these matters were inserted in the abstracts from such an examiantion as was made, in the condition in which the abstracts were at the time that they are said to have examined them. The volume of the work was such that no one in the period of three or four days could form any estimate or accurate opinion of what they contained, unless some one had called attention to these particular matters; and it is not shown this was done, and the appellee, nor its agents, did not know of the insertions of the numerous levee board proceedings, and minutes of the purported abstract of the act creating the Levee District, instead of a copy of the same, the curative acts, and of numerous reports and settlements in overdue tax proceedings, and county court orders and other matter of a similar kind. If it had known all these things, the correspondence convinces me that Mr. McVeigh did not consider at the time of the agreement to make further advances amounting to $1,500, nor for a long time thereafter, that appellee waived anything in the agreement except its right to refuse to advance the amount, which it need not have done, but which it did do in consideration of the seven and one-half per cent. reduction from the amount that might be found due at the completion of the work. Mr. McVeigh does not claim to have suffered any injury in having acted upon a supposed settlement or ratification or compromise; nor that he would have acted other than he did, had not the alleged examination and approval been given. It is true that he gave up seven and one-half per cent. of the gross amount of his bill, but he offered to pay 10 per cent. on his advances, and I find his seven and

one-half per cent. to be the price he was willing to pay for the advancement to him, before it was due, [of] the further sum of $1,500, as well as the $7,500 already advanced him. I find therefore that there has been no account stated as alleged in the complaint."

The chancellor sustained plaintiff's exception to this finding, and held that "both parties acquiesced in a practical construction of the contract, the abstracts being exhibited to defendant's attorney, who either examined the abstracts or had the opportunity to do so," but that plaintiff, McVeigh, "having stated to appellant that the work would amount to 28,000 pages, cannot be allowed more pages."

It is important to consider, in the first place, the nature of the reference to the special master and the effect which should be given to his findings of fact and conclusions of law. It was a reference by consent of parties. The stipulation is not in the record, but the court's order shows clearly that the reference was made on account of an agreement of the parties that the case should be referred to a special master of their own selection. It was not merely a selection of a master, but it was also a consent reference to a special master. The court merely ratified the agreement of the parties. The order does not specify the powers of the special master, so it must be inferred that it was intended to invest him with powers and charge him with the duties prescribed by statute, which are to take testimony and state an account between the parties according to the facts. Kirby's Digest, § 6333. "The findings of fact by a consent referee (or master) have the same conclusiveness as the verdict of a jury or findings of fact by a court sitting as a jury. * * * Where there is any testimony legally sufficient to support such findings, they will not be set aside." *Greenhaw* v. *Combs,* 74 Ark. 336; *Paepcke-Leicht Lumber Co.* v. *Collins,* 85 Ark. 414; *Griffin* v. *Anderson-Tully Co.,* 91 Ark. 292; *Carr* v. *Fair,* 92 Ark. 359.

The testimony is conflicting, but it is sufficient to sustain the findings of fact by the master, and they should not be set aside. There was no express reference to the master of questions of law; therefore the parties are not bound by his conclusions of law. *Greenhaw* v. *Combs, supra; Davis* v. *Schwarts,*

155 U. S. 631. The interpretation of the contract was a question of law, and the parties were not bound in that respect by the conclusions of the master. *United States Trust Co.* v. *Mercantile Trust Co.*, 88 Fed. 140.

It is the duty of the court to determine all questions of law in a case where there has been no express consent that the same shall be referred to a master for decision. It follows, therefore, that the court should interpret the contract as a matter of law, and apply it to the facts found by the master. We accept as conclusive the finding that the abstracts furnished by McVeigh, after excluding the duplicates, contained therein 34,274 pages and transfers, with an addition of 451 pages reported by the master in a later report, making a total of 34,725.

We therefore proceed to determine what deduction should be made of the pages of the abstract not called for by the contract.

The items to be first considered is 610 pages for transcribing acts of Congress of September 28, 1850, granting swamp lands to the States. That act is general in its terms, and applies to all lands in the States of the character described. This is not a special act of Congress within the meaning of the contract. This excludes the 610 pages claimed on that item. The same applies to the act of Congress donating internal improvement lands, and the several statutes of this State curing defective conveyances and acknowledgments. Nine hundred and forty-four pages were properly excluded by the master on account of those two items.

Eighty-nine pages for abstracting the act of the General Assembly donating lands to the St. Francis Levee District were excluded, both by the master and by the chancellor. The only ground upon which it is contended these pages should be included is on account of the presumed acquiescence in the insertion of these pages in the abstract. The finding of the master is conclusive as to this.

A majority of the judges hold that, even if the act of the General Assembly creating the St. Francis Levee District should be deemed a special act within the meaning of the contract, plaintiff is not entitled to pay for abstracting it, since he did not transcribe it in full, as required by the contract. This view excludes 1,446 pages for abstracting that statute.

Two thousand, three hundred and fifty-five pages of the abstract contained minutes of the St. Francis Levee Board, and 994 contained delinquent lists returned by the collectors of the levee board. These pages were excluded by the master, but reinstated by the chancellor. These matters should not have been included in the abstract, except such as directly affected the title to lands sold for levee taxes. Under the statute authorizing sales for levee taxes in that district, the lien for assessments is enforced by foreclosure proceedings in the chancery court in the nature of proceedings *in rem,* and the foreclosure decrees are conclusive of all matters adjudicated therein. The minutes of the levee board and the delinquent lists cannot therefore directly affect the title to the lands, and they were improperly included in the abstract. Moreover, the findings of the master are presumptively correct, and it is not shown that these maters included in the abstract "affect vitally or historically the title to the lands traced therein."

We are of the opinion that plaintiff's contention as to what shall be construed to be a "transfer" is correct, and that the master erred in excluding the charge for 2,115 transfers. The contention is, for illustration, that the selection and approval of swamp lands, the patent to the State, the entry in the land office of the patent to individuals, all appearing at different times and in different records, each constitutes a separate transfer within the meaning of the contract. Also, that a contract to convey, followed by deed pursuant to the contract, each constitutes a separate transfer. The contention of the defendant is that all such transactions are successive steps in one transfer, and constitute but a single transfer. Undisputed testimony was adduced by plaintiff showing that among abstracters each of such items is treated as a separate transfer, and usually embraced in an abstract separately. We conclude that that is the correct interpretation of the contract.

Four thousand, seven hundred and eighty-six pages were included in the abstract under the head of "Tax Forfeitures," for transcribing county court records, assessment books, tax books, notices of sale and certificates of redemption. In addition to that, collectors' certificates of delinquencies and clerks' certificates of forfeitures were included, and these were allowed by the master. The words "tax forfeitures" in the con-

tract are very indefinite. Plaintiff McVeigh prepared the contract, and it is his own language, and must be construed in its most limited sense against him. It does not include all antecedent steps with relation to the assessment of taxes.

The abstracter charged for transcribing the tax deeds by the page, and not as a transfer. This added 456 pages to the abstract. Section one of the contract fixed the rate of compensation, and, according to the terms of that section, instruments which purported to transfer title were to be charged for as transfers, regardless of the number of pages taken up in setting them forth. The third section of the contract requires the abstracter to transcribe tax deeds in full, but that does not enlarge the rate of compensation prescribed in the preceding section. That charge for additional pages was properly excluded.

The abstracter included overdue tax proceedings, covering 7,664 pages of the abstract. The master deducted 4,441 pages. His report shows that he went through the abstract carefully and eliminated copies of records which do not affect the title to the lands. As far as these matters are brought to our attention, we conclude that he was correct in his findings. It is insisted, however, that the contract called for copying "all decrees, orders of court or documents on file of whatever nature." We do not so construe the contract. It called only for such records as "vitally and historically" affected the title to the lands mentioned in the abstract.

The chancellor was correct in refusing to charge plaintiff with the extra expense of correcting inaccuracies of the abstract. They were mainly unimportant, and, as soon as the attention of the abstracter was called thereto, he offered, and still offers, to make the necessary corrections.

Plaintiff is entitled to interest at legal rate on the amounts found to be due under the contract.

Conformable to the views herein expressed, the account is stated as follows:

Number of pages furnished by abstracter_____   34,725

| | Pages |
|---|---|
| Deduct | |
| Transcribing Swamp Land Act_____ | 610 |
| Transcribing Curative Acts_____ | 912 |
| Transcribing Internal Improvement Act_____ | 32 |

Transcribing Donation Act_____  89
Abstracting St. Francis Levee District Act_____1,446
Transcribing Minutes Levee Board_____3,289
Transcribing Tax Forfeitures_____4,786
Transcribing Tax Deeds_____  456
Transcribing Overdue Tax Items_____4,441  16,061

Total number of pages to be paid for_____     18,664
                              Amounts.
18,664 pages at 66 2-3 cents each_____$12,443.00
Discount 7½ per cent_____$  933.22
Amount advanced _____ 9,539.55  $10,472.77

                                        $  1,970.23
The decree of the chancellor is therefore reversed, and a decree is entered here in favor of plaintiff for the sum of $1,970.23, with interest from May 17, 1906.

It is so ordered.