MORTIMORE *v.* ATKINS.

Opinion delivered March 13, 1911.

1. APPEAL AND ERROR—CONCLUSIVENESS OF MASTER'S FINDINGS.—Findings of fact made by a master appointed by consent are as conclusive as the verdict of a jury, and will not be disturbed if they are supported by legally sufficient testimony. (Page 189.)

2. PARTNERSHIP—POWER OF PARTNER TO PAY DEBTS.—The members of a partnership are authorized to settle and adjust claims against the partnership. (Page 192.)

Appeal from Crawford Chancery Court; *J. V. Bourland,* Chancellor; reversed.

STATEMENT BY THE COURT.

This action involves the settlement of the partnership affairs of Mortimore & Co., a firm engaged in buying and selling cotton

at Van Buren, Arkansas, and composed of W. C. and R. W. Mortimore, J. C. Atkins and W. H. McMurray. W. C. and R. W. Mortimore resided at Greenville, Texas, and composed the firm of Mortimore & Company, engaged in the cotton business at that place. W. H. McMurray was also a member of the firm of W. H. McMurray & Company, engaged in the cotton business at Little Rock, Arkansas. J. E. Atkins resided at Van Buren, and had the immediate charge of the business of the partnership; and bought all the cotton for the firm. There was a written contract of partnership executed on September 10, 1909. By the terms thereof it was agreed that J. E. Atkins should be active manager of the business, and should devote his time to the best interest of the business; that Mortimore & Company of Greenville, Texas, and W. H. McMurray of Little Rock, Ark., should furnish the new firm all of their correspondents in Europe and America, and should sell all the cotton possible for the new firm without charge for personal services; that neither Mortimore & Company nor W. H. McMurray should charge the new firm for any office work done at Greenville, Texas, or Little Rock, Arkansas; that if the profits are less than $5,000 they shall be divided; one third to Mortimore & Company of Greenville, one third to J. E. Atkins and one third to W. H. McMurray. The profits did not amount to over that sum, and it is not necessary to state how they should be divided if they exceeded $5,000. The losses were to be borne in the same proportion. In November, 1909, a disagreement arose between the partners over the way the business had been conducted, and the firm ceased buying cotton. They were unable to agree upon a settlement of the partnership affairs. W. C. and R. W. Mortimore instituted this suit in the chancery court against J. E. Atkins and W. H. McMurray for the purpose of settling the partnership affairs. They prayed that a receiver be appointed to take charge of the assets of the firm; that a master be appointed to state an account between the partners. That upon final hearing the partnership be dissolved, its affairs settled, and the profits divided between the partners according to their respective interests. A receiver was appointed by the court; but, as no exceptions have been made to his reports, no further reference need be made to him.

By consent of parties, a master was appointed to take proof

and state the account between the parties. His report is as follows: "Now comes the master in the above-entitled cause and presents the following to this honorable chancery court as his report to said court as master in the above entitled cause.

"At the November term, 1909, of this honorable court I was appointed master by said court to take and hear proof in this action on all claims that might be offered against the firm of Mortimore & Company, of Van Buren, Arkansas, and to take an account of said claims, and of the partnership business of said firm of Mortimore & Company, of Van Buren, Arkansas, and to report my findings in this behalf to this court.

"I respectfully state that on the 20th day of April, 1910, personally appeared before me W. C. Mortimore, of the firm of Mortimore & Company, of Greenville, Texas, and of Mortimore & Company, of Van Buren, Arkansas, and personally appeared before me J. E. Atkins and W. H. McMurray, of the firm of Mortimore & Company, of Van Buren, Arkansas, and also appeared E. L. Matlock and R. R. Neyland, attorneys for Mortimore & Company, of Greenville, Texas, and Sam R. Chew, attorney for Atkins & McMurray, when I proceeded to take and hear testimony upon the condition of the partnership business of Mortimore & Company, of Van Buren, Arkansas, and upon the validity, justness and correctness of the claims of Mortimore & Company of Greenville, Texas, against the firm of Mortimore & Company, of Van Buren, Arkansas.

"The testimony of all witnesses was, by agreement of said parties, taken in shorthand and afterwards written out by typewriter. Each of the testifying witnesses were by me duly sworn that the evidence they and each of them should give before me in the above entitled cause should be the whole truth as they should answer unto God. The signatures of the said witnesses to their respective evidence so given before me was by all of said parties waived. I therefore proceeded on said 20th day of April and from time to time upon agreement of all parties until the 2d day of May, 1910, to so take and hear evidence upon said claims of Mortimore & Company, of Greenville, Texas, and upon the condition of the said partnership business of Mortimore & Company, of Van Buren, Arkansas.

"I find from the evidence that W. C. and R. W. Mortimore

are partners, and as such compose the firm of Mortimore & Company, of Greenville, Texas. I further find from the evidence that the firm of Mortimore & Company, of Van Buren, Arkansas, is composed of W. C. Mortimore, R. W. Mortimore, W. H. McMurray and J. E. Atkins. I find from the evidence that the entire assets of Mortimore & Company, of Van Buren, Arkansas, consist solely of the following items, towit: moneys in the hands of George R. Wood, of Van Buren, Arkansas, as receiver of the property of Mortimore & Company, of Van Buren, Arkansas, which is held by the said George R. Wood subject to the order of this court, to be $4,022.32. I find $500 of this amount to be part of the proceeds of the sale of 100 bales of cotton marked "OPET," said sale being made by R. W. Mortimore on the 10th day of November, 1909, and that said cotton was the property of Mortimore & Company, of Van Buren, Arkansas. I find further that there is now in the hands of George R. Wood, as receiver, bagging used for patches, that is the sole property of Mortimore & Company, of Van Buren, Arkansas, of the value of $747.15. I find the total assets of Mortimore & Company, of Van Buren, Arkansas, to be $4,769.47. I find from the evidence that Mortimore & Company, of Van Buren, Arkansas, is indebted to Mortimore & Company, of Greenville, Texas, in the sum of $2,534.24. In arriving at said finding I allowed the following claims of Mortimore & Company, of Greenville, Texas, $313.61, 285.53, 241.64, 189.94, 433.56, 82.08, 25.45, 230.08, 255.00, 66.30, 250.00, 150.00, as set forth in exhibits B, C, D, E, F, G, H, I, J, K, L and M.

"I find from the evidence that Mortimore & Company, of Greenville, Texas, are indebted to Hagedoon & Company, of New York, in the sum of $1,462.30 for insurance upon cotton belonging to Mortimore & Company, of Van Buren, Arkansas; that there is now pending in the Crawford Circuit Court a suit by Hagedoon & Company against Mortimore & Company, of Greenville, Texas, for said insurance, but I find further in charging Mortimore & Company, of Van Buren, Arkansas, with said amount of insurance, that Mortimore & Company, of Greenville, Texas, is indebted to Mortimore & Company, of Van Buren, Arkansas, in the sum of $1,451.25, this being part of the proceeds from the sale of 204 bales of cotton that Mortimore & Company,

of Greenville, Texas, sold for Mortimore & Company, of Van Buren, Arkansas, leaving still a balance of $11.15 due Mortimore & Company, of Greenville. Texas, from Mortimore & Company, of Van Buren, Arkansas.

"I find from the evidence that Mortimore & Company, of Greenville, Texas, sold practically one-half as much cotton for Mortimore & Company, of Van Buren, Arkansas, as was sold for Mortimore & Company, of Greenville, Texas, and, in accordance with said finding, plaintiff's claim for $344.02, as set forth in exhibit "J," is by me reduced to $255.00, which practically is one-third of $762.03, the total cable account of Mortimore & Company, of Greenville, Texas, and Mortimore & Company, of Van Buren, Arkansas.

"I find that the item amounting to $3,082.10, claimed by Mortimore & Company, of Greenville, Texas, to be due them by Mortimore & Company, of Van Buren, Arkansas, was derived from cotton belonging to Mortimore & Company, of Van Buren, Arkansas, that was sold and handled by Mortimore & Company, of Greenville, Texas, and the same is by me disallowed, as I find no legal liability of Mortimore & Company, of Van Buren, Arkansas, for said amount.

"Finally I report the statement of the account of Mortimore & Company, of Van Buren, Arkansas, as I find it to be from the evidence, as follows:

Total assets ...................................$4,769.47
From which must be deducted...................... 2,534.24
being the amount Mortimore & Company, of Van Buren, Arkansas, is indebted to Mortimore & Company, of Greenville, Texas, leaving a balance of $2,235.13 to be divided as follows:   One-third to Mortimore & Company, of Greenville, Texas; one-third to W. H. McMurray, and one-third to J. E. Atkins, less the costs and expenses of the above entitled cause.

"I respectfully ask the court to fix some sum of money as compensation for my services rendered herein to be paid out of the assets herein accounted for and to allow me the sum of $62.50 for services rendered by W. Morse, as stenographer and typewriter, in taking down the testimony herein and for an order of this court directing the payment of said sum before making

final distribution to the members of the firm of Mortimore & Company, of Van Buren, Arkansas.

"Having fully reported herein the manner in which I have discharged my duties as master of this court, I respectfully submit this, my report, and beg that it be received and confirmed by the court and that I be discharged from further duty herein."

Mortimore & Company, of Van Buren, handled 4,077 bales of cotton during the existence of the partnership. Atkins bought nearly all the cotton for the firm. W. C. Mortimore bought two or three small lists, probably 50 bales. Mortimore & Company, of Greenville, sold 2,486 bales of the cotton. The claims of Mortimore & Company, of Greenville, amounting in the aggregate to $2,534.24 and allowed by the master, grew out of the sale of these 2,486 bales. McMurray and Atkins sold the balance of the cotton except 200 bales, which were sold by McMurray, Atkins and R. W. Mortimore; and the proceeds of sale were deposited to the credit of Mortimore & Company, of Van Buren, in the Citizens Bank of that place.

The chancellor in all things set aside and dismissed the report of the master, and made findings of his own, and entered a decree accordingly. Because the views we shall hereinafter express sustain the findings and report of the master, it will be unnecessary to set out in full the findings and decree of the chancellor, but reference will be made in the opinion to such portions as are deemed necessary. Such facts as are not stated above, which are necessary for a proper determination of the issues involved, will also be stated or referred to in the opinion. The case is here on appeal.

*E. L. Matlock* and *Dan W. Jones,* for appellants; *Neyland & Neyland,* of counsel.

1. The master having been appointed on the motion of and by consent of the parties, his findings of facts are as conclusive as the verdict of a jury. 74 Ark. 336; 85 Ark. 414; 91 Ark. 292; 92 Ark. 359; 96 Ark. 480.

2. The findings and conclusions of the master upon questions of law are not conclusive, and are subject to review by this court. The court erred in holding that the "covering" transactions were gambling contracts. 67 Ark. 172.

*Sam R. Chew,* for appellee.

1. Partners in handling and dealing with partnership property and funds are held to the utmost good faith. 1 Bates on Partnership, § § 303, 313; 18 Beav. 75; 57 Barb. 127; 29 Ala. 379; 4 Sandf. Ch. 223; 13 Ark. 609; 53 Ark. 152.

2. The findings of a master appointed by consent will not be taken as conclusive unless such findings are supported by legally sufficient evidence. 74 Ark. 336.

HART, J., (after stating the facts). It is conceded that under the appointment all questions of fact were referred to the master, and, the appointment having been made by consent of the parties and on their motion, his findings and conclusions upon questions of fact are as conclusive and binding as the verdict of a jury; and where there is testimony legally sufficient to support such findings, they will not be disturbed. Such is the effect of the following decisions, cited by counsel in their briefs. *Greenhaw* v. *Combs,* 74 Ark. 336; *Paepcke-Leicht Lbr. Co.* v. *Collins,* 85 Ark. 414; *Griffin* v. *Anderson-Tully Co.,* 91 Ark. 292; *Carr* v. *Fair,* 92 Ark. 359; *McVeigh* v. *Chicago Mill & Lbr. Co.,* 96 Ark. 480.

The plaintiffs, W. C. and R. W. Mortimore, claim credit for $3,082.10, designated in the proof as "covers" or "hedges." The master disallowed the claim, finding "no legal liability of Mortimore & Company, of Van Buren, Arkansas, for said amount."

The chancellor disallowed this claim of the plaintiffs on the ground that it was "a ruse and an attempted fraud upon their part upon the rights of defendants, J. E. Atkins and W. H. McMurray, in the partnership business of Mortimore & Company, of Van Buren, Arkansas." The ground on which plaintiffs make this claim is that subsequently to the execution of the written contract they made another and different contract with the defendants in regard to the sale of cotton to the firm. It will be noted that the firm of Mortimore & Company, of Greenville, composed of W. C. and R. W. Mortimore, the plaintiffs, sold 2,486 bales of cotton for Mortimore & Company, of Van Buren. This cotton was shipped to foreign customers, and the money actually received on the sale as each lot was shipped was deposited to the credit of Mortimore & Company, of Van Buren, in the Citizens' Bank of that place. In regard to the sale of this cotton, W. C. Mortimore testifies that, by a special or new agreement made sub-

sequent to the original contract of partnership, the firm of Mortimore & Company, of Greenville, was to cover the daily cotton purchases of Mortimore & Company, of Van Buren, by applying same upon contracts for the sale of spot cotton, which the firm of Mortimore & Company, of Greenville, had, to protect the Van Buren firm against possible loss, occasioned by the fluctuation in the market value of cotton so purchased by the Van Buren firm. That by the terms of this new agreement all cotton bought by the Van Buren firm was reported by wire to the Greenville firm that it might be covered, and the Greenville firm undertook to cover all Van Buren purchases daily. That as the quality bought was unknown until samples arrived (usually 14 days after the date of purchase was reported), and as the lots purchased were also too irregular in quantity to be sold separately, the Van Buren purchases, according to a general custom of the cotton business, were absorbed into the Greenville purchases, and the whole covered by a general sale. That, on arrival of the cotton samples and re-weights, the cotton was applied indiscriminately to any open contract on the Greenville firm's books without reference to price or date or cover. That on this account Van Buren purchases were applied to sales made before and after the date its purchase was reported and covered as the quality happened to suit contracts open on the Greenville firm's books. That the cotton bought by Mortimore & Company, of Van Buren, was bought on the basis of January future quotations, and was sold that way. That, for the sake of clearness and fairness, the "closing price of January in New York" was used as the basis in each and every case, both for purchase and sale. In short, according to his testimony, the new agreement was made for the purpose of protecting Mortimore & Company, of Van Buren, from loss in buying and selling cotton, and the Van Buren firm bought the cotton and sold it to the Greenville firm on the basis of January future quotations; and that the Van Buren firm in consequence was not interested in the price for which the Greenville firm re-sold the cotton—whether such re-sale resulted in loss or gain. The cotton was shipped by the Greenville firm to its customers, and the price received for it was deposited in the Citizens' Bank at Van Buren to the credit of the Van Buren firm, leaving the differences in price at which the Greenville firm took it and at which it actually

sold it to be later adjusted between the two firms. According to Mortimore's testimony, the Greenville firm sold these 2,486 bales of cotton for $3,082.10 more than it agreed to allow the Van Buren firm for them. This is the item which the master did not allow for the reason that he found that there was no legal liability of the Van Buren firm for this amount. The chancellor found that this method of dealing as testified to by W. C. Mortimore was an attempted fraud upon the rights of Atkins and McMurray, and disallowed the claim on that ground. As we view the matter, the question of fraud need not be considered. Both McMurray and Atkins testified that they made no such agreement as testified to by W. C. Mortimore. It is urged by counsel for plaintiffs that their testimony in this respect is contradicted by their own letters to the plaintiffs in which they recognized that all cottons purchased by the Van Buren firm were being covered by plaintiffs, and that they preferred that all cotton be kept covered at all times. Both Atkins and McMurray testify that they understood that plaintiffs meant hedging or covering by buying futures, and in this way protecting themselves from loss, and that this is what they referred to in their letters to plaintiffs. Mortimore himself admits that he bought no cotton futures on account of the Van Buren firm. Hence this leaves the question one of fact; and it is, did plaintiffs and defendants make the new agreement testified to by W. C. Mortimore? If they did not, then plaintiffs sold the cotton under the original contract of partnership, and defendants are entitled to their share of the proceeds of sale. The master found that no such agreement as testified to by W. C. Mortimore was made. This is the effect of his finding that there was no legal liability of Mortimore & Company, of Van Buren, for said amount. His finding in that respect has evidence legally sufficient to sustain it, and under the rule above announced the chancellor erred in setting it aside.

The master allowed the claims of plaintiffs set out in exhibits B, C, D, E, F, G, H, I, J, K, L and M. It is not necessary to set them out *in extenso*. Most of them are for reclamations on account of loss of weights and undergrade of cotton sold by plaintiffs for Mortimore & Company, of Van Buren. The chancellor found that there was no legal proof to sustain these claims for reclamation, but we think he erred in so holding.

W. C. Mortimore testified (and his testimony is not attempted to be contradicted) that all the cotton sold by plaintiffs for Mortimore & Company, of Van Buren, was to customers in foreign countries or to cotton manufacturers in the United States; that in either case the seller must guaranty the weights, the grade and the staple; that the shipments are subject to reclamation against the seller if the weights are deficient; that the seller must make good the difference in staple and grade; that, according to the rule of the cotton trade, when a claim for reclamation is made by the buyer, the seller must pay it as made, or have the claims submitted to arbitration and then pay whatever award is made; that the claims are based on awards made by the board of arbitrators, and were paid by plaintiffs in good faith. It is contended that this evidence is incompetent. Counsel for plaintiffs insist that plaintiffs had no personal knowledge that there was a loss in weight or a deficiency in the grade or staple of the cotton, and contend that such loss must be established by persons who have actual knowledge of those facts. We can not agree with this contention. The cotton was sold by plaintiffs for the firm of Mortimore & Company, of Van Buren, and the adjustment of the claims for reclamation was a part of the transaction. The plaintiffs were members of the firm and were its agents. The adjustment was made in good faith and in accordance with the custom of the cotton business in such cases. The power of the plaintiffs as members of the firm to settle the partnership claims resulted from their agency for the firm; and the testimony of W. C. Mortimore that he had settled or adjusted the claims was competent. 30 Cyc. pp. 477 and 500; Bates on Partnership, § 384; George on Partnership, pp. 216-220. It follows that the finding of the master should not have been disturbed.

One of the items embraced in the exhibits was for telephone and telegraph charges in regard to business of the firm. Mortimore testified that, while he kept no separate account of the amounts so expended by the Greenville and Van Buren firms, each firm had about the same amount expended for telegraph and telephone service, and that the expense should be shared equally. He gave a statement of the amount expended for both offices, and the master charged the Van Buren office with half of it. His finding should not be disturbed.

Hagedoon & Company of New York filed an intervention in the cause, and the amount claimed by it for insurance on cotton was by agreement of the parties allowed and paid. This amount was due on insurance on the firm's cotton, and was properly allowed. A consideration of the whole case leads us to the conclusion that the findings of the master have evidence legally sufficient to support them; and, the submission to him having been made by consent of the parties, the chancellor erred in setting them aside.

It follows that the decree must be reversed and the cause remanded with directions to the chancellor to enter a decree in accordance with the findings of the master.