## CORCORAN ET UX. v. ABSTRACT & TITLE COMPANY OF MARYLAND, INC.

[No. 289, September Term, 1957.]

634

*Decided July 18, 1958.*

*Motion for rehearing filed August 15, 1958, denied September 16, 1958.*

*Dissenting opinion filed July 24, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*David A. McNamee,* with whom were *W. Carroll Beatty* and *Beatty & McNamee* on the brief, for appellants.

*Henry A. Babcock,* with whom were *Walter L. Green* and *Green & Babcock* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellants agreed to purchase from George O. King and Esther J. King, his wife, a parcel of land in Riverdale Park, Prince George's County, and employed the appellee to examine the title for them. In due course a certificate of title was executed and delivered to the appellants by the title company. It certified that "the title to the above described real estate is considered good in fee simple", with certain exceptions not here material. It further stated: "This certificate does not cover mechanics' liens not recorded at the date hereof, nor unrecorded deeds, adverse claims and interests, defects of title, secret trusts, easements, restrictions, or any other liens or encumbrances not properly evidenced by the public land records and not properly indicated by general indices at the date hereof." The certificate did not list among the exceptions, following the statement that the title was "good in fee simple", a right-of-way deed from George O. and Esther J. King to the Washington Suburban Sanitary Commission, recorded on January 28, 1954. After delivery of the certificate, the appellants completed the purchase and entered into possession of the property.

Upon discovery of the easement, when the Sanitary Commission began to excavate and lay pipe lines across their lot,

the Corcorans filed an action presumably in tort, against the title company, and obtained a judgment upon a jury's verdict, which was set aside, on the ground that the verdict was excessive, and a new trial granted. Thereupon, the declaration was amended, basing the claim for damages upon the allegation that the plaintiffs were induced to accept the title "by the incorrect and negligent representation" of the title company. The defendant filed a motion for summary judgment, with supporting affidavit and exhibits. The motion was granted.

It appears that the land records in question were indexed according to the "Cott" system. Instruments offered for record are recorded in libers or books maintained for that purpose, with an index arranged alphabetically in the front of each liber, and references then given to the initial folio or page where the particular instrument is transcribed. There are also grantor and grantee indices referring an abstracter to the appropriate liber and folio where the instrument is recorded. The instrument in question was correctly recorded in Liber 1693, fol. 251, and was correctly noted in the grantee index. In the grantor index, however, there was a clerical mistake. The entries were as follows:

| Surname | Grantors | Grantees | Kind of Instrument | Date Recorded | Land (Book) | Record (Page) |
|---------|----------|----------|--------------------|---------------|-------------|---------------|
| King | Esther J. George O. | W.S.S.C. | R/W | Jan. 28, 1954 | 1693 | 248 |
| King | Winifred William A. | W.S.S.C. | R/W | Jan. 28, 1954 | 1693 | 251 |

The page numbers were transposed by the clerk who made the entries. The right-of-way deed from the appellants' predecessors in title actually appeared at page 251, and the right-of-way deed from William A. King and Winifred King appeared at page 248. If we assume that the abstracter ran the grantor index, he must have found the entry showing the conveyance of a right-of-way from George O. and Esther J. King. If he then turned to page 248, he found there the conveyance from the other Kings. Presumably, he made no further investigation. If he had turned back to the index showing the entry as to the other Kings, the transposition would

have become apparent, or, having been referred by the general grantor index to the proper liber he had consulted the index to that liber, or if he had consulted the general grantee index to which the entries in the grantor index should have led him, the error would have become apparent. But the trial court took the view that the action was barred by the language of the certificate above quoted.

One who undertakes to examine a title for compensation is bound to exercise a reasonable degree of skill and diligence in the conduct of the transaction. This liability, "although ordinarily enforced by an action of case for negligence in the discharge of his professional duties, in reality rests upon his employment by the client and is contractual in its nature." *Watson v. Calvert Bldg. Ass'n*, 91 Md. 25, 33. It is generally recognized that damages are recoverable on the theory of a breach of contract, and the legal situation is not changed by the fact that the contractual act bargained for is negligently performed. See *Russell & Co. v. Polk County Abstract Co.*, 54 N. W. 212 (Ia.); *Savings Bank v. Ward*, 100 U. S. 195; *Bridgeport Airport v. Title Guaranty & Trust Co.*, 150 A. 509 (Conn.); *Commercial Bank of Mott v. Adams County Abstract Co.*, 18 N. W. 2d 15 (N. D.); *Trisdale, Inc. v. Shasta County Title Co.*, 304 P. 2d 832 (Cal.). See also 1 *Fitch, Abstracts & Titles to Real Property*, § 10; Note 28 *A. L. R.* 2d 891; 1 *Am. Jur., Abstracts of Title*, § 27; 1 *C. J. S., Abstracts of Title*, § 11. Since the liability is contractual, it may be limited in its scope by apt and clear language brought home to the employer. Liability in the instant case depends upon the meaning to be accorded the exclusion clause in the certificate of title.

The right-of-way deed was duly recorded in Liber 1693, fol. 251 of the land records and it is conceded that it was "properly evidenced by the public land records". The question is whether it was "properly indicated by general indices", under a fair and natural construction of the phrase selected by the defendant. Since the facts as to the state of the records are undisputed, the problem is one of construction, and we think the phrase is not free from ambiguity. It is not clear, for ex-

ample, whether the use of the plural imports that the indication must appear in one or all of the indices, or whether something short of complete accuracy might still be an indication. Each of the three entries in the indices showed that a right-of-way deed from George O. and Esther J. King had been placed upon record. The only error was in the page reference in the grantor index. It is argued that the use of the word "properly" imports clerical exactness in every entry. But in some contexts at least, the word may import an adequacy to accomplish the purpose intended, without nice distinctions as to the correct form of the entries. Cf. *Jones v. Danforth,* 98 N. W. 668 (Neb.), where the phrase construed was "properly docketed". The closest case on the facts that we have found is *Crook v. Chilvers,* 157 N. W. 617 (Neb.). There it was held that an abstracter was not relieved of liability because of an error in the numerical index, upon which he relied without further examination. There was no exclusion clause in the certificate, but it was assumed, that the abstracter would not have been liable if the encumbrance had not been recorded at all, or not properly recorded in any of the indices.

We think it may fairly be contended that the entry in the grantor index was enough to put a reasonably skillful and diligent abstracter upon notice of the deed, and that it was his duty to exhaust the means at hand to locate it. Of course, he was not obliged to go outside the record, but here the error could have been detected by referring to the grantor and grantee indices' since the correct page number appeared on the grantee index, or by merely referring back to the grantor index where the conveyance by the other Kings was entered. Whether the abstracter used reasonable care under the circumstances presented an issue to be resolved by the trier of facts, or by the court upon motion for directed verdict. In the light of the general undertaking to use reasonable skill and diligence, we think the exception should be construed to cover only those cases where the error could not reasonably be discovered by a further search of the indices.

We conclude that the defendants' motion for summary judgment should not have been granted, and accordingly, we

shall reverse the judgment and remand the case for further proceedings.

*Judgment reversed and case remanded, costs to be paid by the appellee.*

PRESCOTT, J., filed the following dissenting opinion.

The issue here involved is a narrow one, and, in my opinion, the Court has decided the case on a theory that has no application to the facts. The Court has reversed the trial court and held that although "[i]n the grantor index, however, there was a clerical mistake" (using the language of the majority concerning a fact admitted by the appellant) in indexing the right-of-way in dispute, the right-of-way was, nevertheless, covered by a certificate of title that provided, "[t]his certificate *does not cover* * * * easements * * * not properly evidenced by the public land records *and not properly indicated by general indices* at the date hereof"; and that the corporation issuing the certificate of title was liable for *negligence* in the performance of its contract. (Emphasis partly added.) It seems to me that we do not reach the question of negligence in the performance of the contract, but all that need be decided is whether or not the language employed in the certificate and quoted above excluded the right-of-way from the operation and effect of the certificate. If it did, the appellee is not liable; if it did not, the appellee is answerable for the breach of its contract, not for negligence. The trial judge held that the right-of-way was specifically excluded by the above language, and that he had no authority to add to, nor detract from, the contract made by the parties. The counsel for the appellee, an able and experienced lawyer, frankly conceded that if the right-of-way were not excluded from the coverage of the certificate by the quoted portion, his client was liable; consequently, it was only necessary to decide the one question: Was the right-of-way covered by the certificate or not?

As stated above, there is no issue of negligence or standard of care properly involved in the determination of this case. Every lawyer knows, as stated by the majority, that one who undertakes to examine a title for compensation is bound to

exercise a reasonable degree of skill and diligence in the performance of his work; however this applies to cases where a lawyer or an abstracting company undertakes to search a title and furnishes a certificate of title, and the question in dispute is within the scope of the investigation by the abstracter as defined by the agreement of the parties. If there be specific exclusions in the certificate and the question involved is whether or not the unreported instrument comes within the purview of the exclusions, the issue is simply a construction of the agreement between the parties, and no question of negligence or degree of skill and diligence enters into the matter. The question is solely whether the abstracter performed his contract, or not. As stated in 1 *C. J. S., Abstracts of Title,* sec. 11, the liability of an abstracter is "measured by the nature, extent and terms of his undertaking or employment and he *cannot* be held liable for failing to do more than his agreement calls for." (Emphasis supplied.) See also 1 *Am. Jur. Abstracts of Title,* sec. 17; Anno. 12 L. R. A. (N. S.) 449.

Let us now see whether or not the abstracter complied with the terms of its agreement. The majority admit "there was a clerical mistake" in the *grantor* index;[1] a fact conceded by the appellant. The certificate stated that "according to the records *as indexed* in the Office of the Clerk of the Circuit Court * * * the title * * * is considered good in fee simple" in the appellants, "[s]ubject, however, to [certain liens not here pertinent] * * * *and to such further limitations as are indicated herein.*" The crucial limitation followed, and is: "This certificate *does not cover* * * * easements * * * not properly evidenced by the public land records *and not properly indicated by general indices at the date hereof.*" (All emphasis supplied.)

I think a fair and reasonable construction to be afforded this limitation is that the certificate did not purport to cover any easement unless it was both properly recorded and prop-

---

1. Anyone who has had the least experience in searching titles knows that this is the important index.

erly indexed in the general indices[2] as of the date of the certificate. According to *Funk & Wagnalls New Standard Dictionary,* (1952), the word *indicate* means to point out, and its modifier *properly* means "in a proper manner; with propriety, appropriateness or fitness; suitably; justly; rightly; exactly; correctly." If we accept any of these definitions of *properly* (and the parties are entitled to make their own contract, without the Court making one for them by giving an unusual and strained interpretation to words), we see that "properly indicated" means "properly pointed out"; "appropriately or fitly pointed out; exactly pointed out; or correctly pointed out." This makes the Court's ruling difficult to reconcile with the conceded and acknowledged mistake in the general grantor index. However, the majority attempt to justify their holding by stating: "But in some contexts at least, the word [*properly*] may import an adequacy to accomplish the purpose intended, without nice distinctions as to the correct form of the entries." Is this the proper test to be applied in construing the certificate?[3] The Court cites no authority for such a test, but says to compare the case of *Jones v. Danforth,* (1904), 98 N. W. 668, (Neb.). That case involved a statute that prescribed that in taking an appeal an appellant must file his transcript and have the same "properly docketed." The Court stated that the appellant could not have a case "properly docketed" in the sense that he could compel the clerk to make the entries in proper form, and simply held that the "intention of the statutes must certainly be to require the appellant to do everything incumbent upon him to do, so that case may be properly docketed, and when he has done that he has done his part." This seems to be poor authority—if, indeed, it be any authority at all—to justify a ruling that changes the ordinary and generally ac-

2. It will be noticed this word is plural. The appellee concedes that had the mistake been in the grantee index, it would have been immaterial.

3. Restatement does not so state. *Rest., Contracts,* sec. 235(a). Williston does not. 3 *Williston, Contracts,* (Rev. Ed.), sec. 618. And this Court has never before so stated.

cepted meaning of terms of a contract, as well as the dictionary definitions of those terms.

The Court states that the case of *Crook v. Chilvers*, (1916), 157 N. W. 617, (Neb.), is the "closest case on the facts" that it has found. In that case there were *no exclusionary limitations whatsoever*. The abstracter certified that he was rendering "a full and complete abstract of all instruments on record or on file in the office of the register of deeds." The register was required to keep general grantor and grantee indices and a numerical index. The abstracter relied upon the numerical index alone, and did not report a mortgage shown on the grantor index, for which he was held liable. While the case has little, if any, analogy to the case at bar because there were no exclusionary limitations in the certificate, the Court specifically points out (at page 619) that the abstracter could have limited his search to the numerical index alone, provided the certificate had so stated.

A case much closer in point is that of *Thomas v. Carson*, (Neb.), 65 N. W. 899. The suit was brought to recover on an abstracter's bond. The certificate contained limitations. The Court held that the relation between abstracter and employer was "purely contractual"; that the abstracter's "liability is measured by his employment"; and, in order for the plaintiff to recover, it was necessary to show "that the act of omission or commission alleged as the cause thereof is a breach of the conditions * * * of the particular engagement to which it relates." Similar rulings or statements were made in the following cases: *American Trust Invest. Co. v. Nashville Abstract Co.*, (Tenn.), 39 S. W. 877; *Abstract & Title Guaranty Co. v. Kigin*, (Ala.), 108 So. 626; *McVeigh v. Chicago Mill & Lumber Co.*, (Ark.), 132 S. W. 638; *Lee Lumber Co. v. Hetherwick Title Co.*, (La.), 107 So. 772; *Wakefield v. Chowan*, (Minn.), 4 N. W. 618; *Chase v. Heany*, 70 Ill. 268; *Hillock v. Idaho Title & Trust Co.*, (Idaho), 126 P. 612. In the last case, the Court, after pointing out that an abstracter's liability is measured by the terms of the certificate, stated: "The certificate annexed thereto [to the abstract] may be of such a nature that it would at-

tach little or no liability to the abstract company and be of as (*sic*) little use to the one who applied for it * * *."

For the reasons assigned above, I think the trial judge was correct in holding that the parties, by their agreement, had specifically excluded the error of the clerk from the responsibility of the abstracter, and that he had no right to make a contract for them; consequently he should be affirmed. In addition, I believe the decision of the Court renders it very difficult for abstracters to determine for what mistakes of the clerks they are to be held liable, and the ones for which they are not to be held responsible.