## CHARLES G. WATSON *vs.* THE CALVERT BUILDING AND LOAN ASSOCIATION OF BALTIMORE CITY.

*Liability of Attorney to Client for Negligence in Examination of Title to Property—General and Special Employment of Attorney—Instructions to Jury Based Upon Conflicting Evidence and Theories.*

Defendant, an attorney at law, was employed to examine the title of certain real estate, upon which the plaintiff, a building association, proposed to make a loan. The attorney made the examination and reported to plaintiff's agent that the title was good and free from liens. Four days afterwards the agent requested defendant to make an abstract and sign a report of title as of the date of the request, the agent knowing that this report was based upon the previous examination. The mortgage to the association, which was not drawn by the defendant, was made. After the examination of title by the attorney and before the date of the report signed by him, the mortgagor confessed judgment in favor of a third party, which took precedence of the mortgage to the plaintiff. Upon foreclosure the proceeds of sale were insufficient to discharge both the judgment and mortgage. The association sued the attorney for negligence in the examination and report of title. Plaintiff's evidence was to the effect that defendant was its general attorney in that county, while defendant alleged that he was employed only in this particular transaction and in the manner above mentioned. *Held,*

1st. That if the defendant had accepted employment as general local attorney of the plaintiff and the matter of the mortgage loan had been referred to him for attention, then it was his duty to bring his search of the title down to the date of the execution of the mortgage, and he is liable for his failure to discover the judgment confessed by the mortgagor, although plaintiff's agent had agreed that the abstract of title might be prepared from defendant's examination made prior to the date of the report.

2nd. That if the defendant was not the general local counsel for the plaintiff but was simply employed by plaintiff's agent to examine the title in question and did make a correct report upon his examination, and was not asked or employed to bring the examination down to the date of the execution of the mortgage, then he is not liable for the loss resulting from the confession of judgment after his examination of the title, although he signed and dated his report four days after the examination, the same having been done with the knowledge of plaintiff's agent that it was based upon the previous examination.

3rd. That since the evidence as to the nature and extent of defendant's employment was conflicting, each party is entitled to have the jury instructed as to the law governing the case if the facts relied upon by such party should be found by the jury.

In an action against an attorney for negligence in examining the title to property upon which plaintiff made a mortgage loan, in that the attorney failed to report the existence of a judgment lien and plaintiff thereby suffered loss, the proceeds of sale being insufficient to discharge both mortgage and judgment, it is no defense that the plaintiff might have compelled the judgment creditor to resort to other property of the mortgagor.

Appeal from the Circuit Court for Allegany County (SLOAN, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*J. W. S. Cochrane*, for the appellant.

The plaintiff's theory of the case was submitted to the consideration of the jury by the granting of its prayer, while that of the defendant was entirely excluded by the rejection of both defendant's first and second prayers. There was evidence in the case tending to prove the theory of plaintiff of general employment and there was also more evidence in the case tending to prove the theory of the defendant of special employment and yet the theory of defendant was wholly rejected. " Opposite and conflicting theories founded upon opposite and conflicting evidence should have been submitted to the consideration of the jury." *Eureka Fertilizing Co.* v. *Balto. Cop. Smeltg. Co.*, 78 Md. 179.

*Charles W. Field* (with whom were *R. R. Henderson* and *De Warren H. Reynolds* on the brief), for the appellee.

The general rule as to attorneys' liability and duty is : " Attorney is bound to execute business in his possession with a reasonable degree of care, skill and dispatch. If the client be injured by the gross fault, negligence or ignorance of the attorney, the attorney is liable, but if he acts in good faith to the best of his skill and with an ordinary degree of attention, he will not be responsible." *Wilson* v. *Russ*, 20 Me. 424; *Savings Bank* v. *Ward*, 100 U. S. 195.

The rule as thus formulated is the one that has guided the Courts in their decisions from the earliest cases to the present day. *Godefrey* v. *Dalten*, 6 Bing. 467; *Gilbert* v. *Williams*, 8 Mass. 57; *Stevens* v. *Walker*, 55 Ill. 156; *Chase* v. *Heaney*, 70 Ill. 270; *Reilly* v. *Cavanaugh*, 29 Ind. 435; *Hatch* v. *Fogerty*, 33 N. Y. Sup. Ct. 174; *Denew* v. *Daverell*, 3 Campbell, 452. " Gross " negligence, as used in these cases, is simply the opposite of "*reasonable*" care, skill and diligence. This is shown by the use of the terms in contradistinction in the same cases, and by a decision in *Waugh* v. *Shunk*, 20 Pa. St. 130, as follows : " Where the words ' gross negligence ' are used, it is equivalent to the opposite of ' reasonable care and skill.' " In *Goodman* v. *Walker*, 30 Ala. 495, it is said : " Some law writers and some adjudged cases are guilty of inaccuracy in the employment of the phrase ' gross negligence.' Our own Court fell into this error in the case of *Evans* v. *Watrous*, 2 Port. 205. It is there said that an attorney is not liable ' unless he has been guilty of gross negligence.' In the same paragraph it is asserted that ' he is bound to use reasonable care and skill,' and the meaning attributed by the writer of that opinion to the expression ' gross negligence,' is the want or absence of ' reasonable care and skill.' Thus explained that opinion defines the true measure of an attorney's duties and liability." See also *Lavall* v. *Groman*, 180 Pa. St. 532.

Applying these principles to the prayers the plaintiff's

prayer correctly presents the law, and sets out all the evidence on both sides.   It seems to us to cover all the law in the case, and to give the defendant all he is entitled to. It not only submits to the jury the question of the defendant's negligence, but also the question of the plaintiff's negligence after the discovery of the defendant's negligence, and we think that even if the defendant's first prayer were good, he could not complain of its rejection, because the plaintiff's prayer gives him all he is entitled to, and there is no need to multiply instructions to the confusion of the jury.   *Baltimore and Reisterstown Turnpike* v. *State, use of Grimes*, 71 Md. 580.

The defendant's contention is, in his first prayer, that if Metzger, plaintiff's agent, knew when Watson wrote up, signed and dated his abstract of title on October 8, 1897, and signed and dated his certificate of title on the same day, that he, Watson, had not examined the records since the 4th day of October, but simply wrote out his notes made on the 4th, then the plaintiff is not entitled to recover. Metzger's knowledge on this subject could not possibly bind or affect the company.   He was a mere agent to solicit applications for loans, and his powers ended there, and there is not one particle of evidence in the record to show that he had any further powers whatsoever.   The defendant, in forwarding his abstract of title, was . dealing directly with the corporation at its home office, and he knew when 'he forwarded such papers, that he forwarded to Baltimore a statement which, for all he knew, might be, and which in fact was, a falsehood ; and he knew that the knowledge of his coemployee (for Watson was also an employee of the company in its legal department) that he was neglecting his duty could not possibly excuse him, Watson, legally or morally with the company.   He cannot excuse himself for neglecting his plain duty and signing a falsehood, which he knew would or might deceive, by claiming that the company's solicitor, who was merely an agent like himself in another department, knew when he, Watson, performed his

duty, that he had not taken due precaution to perform it correctly.

We submit, therefore, that defendant's first prayer was absolutely bad and rightly refused.   And furthermore, that the requirement in said prayer that the jury should find that defendant was expressly employed by the plaintiff to further examine the title to said premises before said loan was made, was absolutely wrong, in view of the fact that it is conceded on both sides that Watson was originally employed to examine the title to Mrs. Loar's property, and to report his views to the plaintiff; and that that duty was never fully performed until a full specific examination and report was made.   And we submit further, that this is borne out by the fact of Watson's conduct in the matter in going long afterwards, about October 14th, 1897, to examine the release of the existing mortgage on the property, and see that the same was properly executed; this he did willingly and reported thereon to the company on October 14th.

SCHMUCKER, J., delivered the opinion of the Court.

This appeal brings before us for consideration the question of the liability, under the circumstances of the present case, of an attorney at law for the omission to discover the presence upon the public records of a judgment which was a lien upon a lot of ground the title to which he had been employed to examine.   The judgment was not upon the record at the time when the title was in fact examined by the attorney, but it was entered by confession in the interval between his examination and the execution of a mortgage upon the lot to his client.

The testimony tended to prove the following facts:

The appellee is a building association located in Baltimore City and, as is usual in such cases, its principal business is lending money upon mortgage.   It does not confine its loans to the place of its location but extends its transactions to other localities.

A short time prior to October 4th, 1897, one Mary A. Loar applied to it for a loan of $700 on mortgage of a lot of land lying at Midland in Allegany County. The appellee then, through D. Ross Metzger, its agent at Frostburg, requested the appellant, who resides at Frostburg, to examine the title to the lot. On October 4th the appellant went to Cumberland and made an examination of the title and made to Metzger a written report, which stated that the title was good and the property free from incumbrances, except a mortgage to the Fidelity Building Association. This report correctly set forth the state of the title at that time.

Metzger forwarded the report upon the title to the home office of the appellee at Baltimore, where it was discovered that the appellant had omitted to sign and date his report, which was thereupon returned to Metzger to have the appellant fully execute it and also furnish an abstract of the title. The appellant, on being applied to by Metzger, objected to making an abstract, saying that he was not paid for that, that he was only to receive $5, and that was for searching the title. Metzger then said, " you have your notes made when you examined the title, write it up from them ; " and thereupon the appellant, on October 8th, in the presence and with the knowledge and assent of Metzger, forthwith made up the abstract at Frostburg from his notes of title which had been made at Cumberland on the 4th of October, and dated both the abstract and report as of the 8th of October and handed them to Metzger who transmitted them to the appellee.

The preparation of the mortgage from Mrs. Loar to the appellee was not entrusted to the appellant, but it was prepared at the home office of the appellee in Baltimore and forwarded to Metzger at Frostburg with directions to him to turn it over to the attorney and instruct him to see that the prior mortgage to the Fidelity Building Association was released before the new mortgage was recorded. The letter containing these directions closed with a request to Metzger to " Look after the insurance, see that the taxes are paid

up to date and any other liens, if any, are cleaned off the record."

At the request of Metzger the appellant on October 21st went with him and Mrs. Loar to the bank at Frostburg, where the prior mortgage was paid off and released. The new mortgage was then executed by Mrs. Loar and her husband and was taken in charge by Metzger who transmitted it to Cumberland for record. There is no evidence that Metzger, before accepting the Loar mortgage and placing it on record, requested the appellant to bring his investigation of the title down to that time or to make any further search for taxes or incumbrances. On the contrary, the evidence indicates that he did not do so, although he must have been aware of the fact that no examination of the title had been made subsequent to October 4th, and must have relied upon the investigation made on that date.

Some time afterwards it was discovered that on October 6th, after the search of the title had been made, but before the execution of the mortgage, and even before the abstract of title had been made up at Frostburg and it and the report on the title had been signed and dated, Mrs. Loar, the mortgagor, had confessed a judgment in favor of a third party for $1,300.

The lien of this judgment, of course, took precedence over that of the appellee's mortgage, and it so reduced the value of the mortgage that when it was foreclosed the proceeds of sale proved insufficient to pay the mortgage debt in full. The appellee then instituted the present case against the appellant for alleged negligence in failing to report the judgment.

The testimony of Hutchins, the appellee's agent at its home office in Baltimore, tended to prove that in the spring of 1897 he had visited Frostburg and employed the appellant to act as attorney, generally, for the Frostburg branch of the appellee's business, his compensation to be paid by the borrower as each loan was made, and that the appellant had accepted the employment, and that he had undertaken

as such general attorney to examine and report upon the title in question.

The appellant denied any employment as the attorney, generally, at Frostburg of the appellee and also offered the testimony of Metzger upon cross-examination tending to show that he was not such general attorney and had been employed by it in only one other case, when he was employed through Metzger ; that in the present case he had been employed by Metzger as the appellee's agent simply to search the title, which he did and reported correctly thereon at the time ; that he was not given general charge or supervision of the Loar mortgage loan transaction, but that it was put by the appellee in the charge of its Frostburg agent, Metzger, through whom all of its communications to him were made, and that the appellant did correctly all that Metzger requested of him in reference to it.

The plaintiff offered but one prayer and it was granted by the Court.   This prayer, although a very long one, presented in a correct manner the proposition that if the jury found that at and for sometime prior to the making of the loan to Mrs. Loar the appellee had employed the appellant as its local attorney for Allegany County and he had accepted the employment, and that the appellee had referred Mrs. Loar's application for a loan to him as its attorney to examine and report upon the title and attend to the matter of the mortgage loan, he was liable for the loss sustained by reason of his failure to discover and report the judgment for $1,300, even though they should find that Metzger, when he asked for an abstract of title on October 8th, assented that it might be made up from the appellant's notes of the search already made.

The appellant, as defendant, offered two prayers, both of which were rejected by the Court.

The first of these prayers asserted the proposition that if the jury found that the appellee's agent, Metzger, employed the appellant for the single purpose of examining Mrs, Loar's title to the lot to be mortgaged, and he thereupon,

on October 4th, 1897, examined the title and made a correct report upon it as it then stood and furnished the appellee's said agent with a certificate thereof, the plaintiff was not entitled to recover unless the jury found that the appellant was also employed to further examine the title before the mortgage was executed, even though they should find that the appellant made the abstract of the title and signed and dated the certificate on October 8th, 1897, with the knowledge and consent of the appellee's said agent that the same were based upon the notes of title made on October 4th without any further examination.

The appellant's second prayer asserted the proposition that if the jury found that the appellee might have compelled the judgment creditor to make his money out of other property of the mortgagor and failed to do so it could not recover.

An attorney at law is liable to his client for the possession of a reasonable degree of skill in his profession as well as for the exercise of a like degree of diligence in the conduct of the transaction about which he is employed. If he fail in either respect he will be responsible to his client for the loss which the latter may sustain therefrom. This responsibility of the attorney, although ordinarily enforced by an action of case for negligence in the discharge of his professional duties, in reality rests upon his employment by the client and is contractual in its nature. Before the attorney can be made liable, it must appear that the loss for which he is sought to be held arose from his failure or neglect to discharge some duty which was fairly within the purview of his employment.

In the present case, if the appellant had accepted the position of counsel generally to the appellee for its business at Frostburg or in Allegany County, and the matter of Mrs. Loar's mortgage loan was placed in his charge as such counsel to examine the title and give legal supervision to the consummation of the transaction, it was incumbent upon him to bring his search of the title down to the date of the

execution of the mortgage, and he was liable to the appellee for such loss as was the result of his failure to discover and report to it the $1,300 judgment.

If, on the other hand, the appellant was not the counsel generally for Allegany County of the appellee, and the Loar mortgage transaction was not placed under his legal supervision, but he was simply employed by Metzger, the agent of the appellee, to examine the title to Mrs. Loar's lot, and he did examine it on October 4th, 1897, and made a correct report of his examination, and was not asked or employed to bring the examination down to the date when the mortgage was subsequently executed, it would be manifestly unjust to hold him liable for a loss arising from the confession of a judgment after the date of his search of the title. Nor would the fact that on October 8th he made at Frostburg, at a distance from the public records of Allegany County, an abstract of the title, and signed the certificate which Metzger returned to him for that purpose, and dated both papers on the 8th, alter his situation, if Metzger knew that no further or additional search of the title had been asked of or made by him, but that the abstract was made up from the notes of his search made on October 4th and assented, and even requested, that it should be so made.

The evidence as to the nature and extent of the appellant's employment, which was the crucial fact in the case, was quite conflicting. While the testimony of Hutchins tended to show such an employment as would have made the appellant liable for the loss in question, the testimony of both the appellant and Metzger tended to prove the contrary. The fact that the appellee did not communicate directly with the appellant in reference to Mrs. Loar's loan, but used its agent, Metzger, as the channel of its communication with him, and requested Metzger and not the appellant to look after taxes and other liens before recording the mortgage, tends to negative the assumption, which is a material part of the appellee's prayer, that the appellant had undertaken to attend generally as its counsel to consummating the mortgage transaction.

The small fee charged by the appellant for his services and the attitude which he assumed when asked to prepare an abstract of the title, before anything was known of the judgment, tend to prove that he at least did not regard himself as charged with the duty of a further examination of the title.   The fact that the agent Metzger did not resent or object to this attitude of the appellant but acquiesced in it tends to strengthen the contention of the appellant, that he had not general charge of the transaction but was only expected to make such investigation as Metzger asked of him.

The case thus presented opposite and conflicting theories as to the nature and extent of the appellant's employment in support of which the evidence was also opposite and conflicting.   Under such circumstances each party was, if he requested it, entitled to have the legal proposition upon which his theory of the case was founded put before the jury in an instruction from the Court setting forth the proposition and declaring what facts it was necessary for the jury to find from the evidence in the case in order to sustain it. *Eureka Fertilizing Co.* v. *Balto. Copper Co.* 78 Md. 188.

The appellee's theory of the case as expressed by its counsel was given to the jury by the granting of his prayer.   We think, without meaning to intimate any opinion as to the weight or the preponderance of the evidence, that the appellant was entitled to have had his theory of the case also put before the jury by granting his first prayer, which the Court rejected.

The appellant's second prayer was properly rejected.   If he was liable for the loss arising from the deficiency of the mortgage security, by reason of his negligence in discovering and reporting to his client the existence of the judgment which rendered deficient the security that would have otherwise been ample to pay the mortgage debt, he could not require the appellee to exhaust all of its remedies against the mortgagor before enforcing the liability of the appellant.   This is not the case of a creditor having a lien

upon two funds, with a subsequent creditor having a lien upon only one of the same two funds, which would entitle the latter to require the former to first resort to that fund which is not common to both. No right to a marshalling of assets arises out of the present controversy.

As the liability, if any there be, of the appellant relates to the sufficiency of the mortgage which is a security for the debt, his situation is in so far that of a surety that he would have been entitled, upon the payment by him of the debt, to an assignment from the appellee of the debt and mortgage, and thus afforded an opportunity to exhaust the other property of the debtor, but he had no right to require the appellee to first exhaust such other property.

Because of the error in refusing to grant the appellant's first prayer the judgment will be reversed and the cause remanded for a new trial.

> *Judgment reversed and cause remanded.*

(Decided March 22nd, 1900.)