BENSON *v.* MAYS, ᴇᴛ ᴀʟ.

[No. 93, September Term, 1966.]

*Decided March 10, 1967.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, OPPENHEIMER and McWILLIAMS, JJ., and MURPHY and
THOMPSON, JJ., Chief Judge and Associate Judge of the Court
of Special Appeals, respectively, specially assigned.

*Harry Goldman, Jr.* for appellant.

*Frederick J. Green, Jr.,* with whom were *Lord, Whip, Cough-
lan & Green, G.C.A. Anderson* and *Anderson, Coe & King*
on the brief, for appellees.

MURPHY, J., by special assignment, delivered the opinion of
the Court.

Appellant, Edgar F. Benson, instituted a medical malprac-
tice action in the Circuit Court for Baltimore County on June
4, 1965 naming four doctors, two hospitals and a medical stu-

dent as defendants. Maryland General Hospital and Doctors Mays and Jiji, three of the defendants and appellees herein, filed motions raising preliminary objections on the ground of improper venue. The court below granted the motions, dismissing the case as against appellees, without prejudice to plaintiff to file suit in the proper jurisdiction. The appeal to this Court from that judgment presents the question of whether venue of the suit is governed by statutory provisions relating to actions *ex delicto*, as held by the lower court, or actions *ex contractu*, as urged by appellant.

The essential facts are these: Appellant consulted Dr. Mays with reference to a prostate ailment on May 18, 1964, and several weeks thereafter was admitted to the Maryland General Hospital for the performance of a transurethral resection to determine whether he was suffering from cancer of the prostate. During the course of the operation, sections of appellant's prostate were sent to the laboratory of the Maryland General Hospital for examination. The sections were there examined by Dr. Jiji, a pathologist, and determined to be cancerous. Appellant was, however, discharged from the Maryland General Hospital about a week later without further surgery. Approximately one month thereafter, he was admitted by Dr. Mays to University Hospital, at which time he underwent surgery for removal of his prostate. Dr. Mays was there assisted by Dr. Acosta-Otero, with Dr. Y. Victor Kent and Robert Leibowitz, a medical student, acting as anesthetists. During the course of this operation, appellant's right ureter was severed and a deep crater burned on the underside of his leg.

Appellant's declaration contained twelve counts, four each for negligence, breach of warranty and assault. The negligence counts charged Dr. Mays with negligently failing to read the chart and pathology report of Dr. Jiji, showing that plaintiff's prostate was cancerous; charged that Dr. Jiji and Maryland General Hospital negligently failed to bring the cancerous findings of the pathology test to the attention of Dr. Mays; charged Doctors Mays, Acosta-Otero and Kent, and Mr. Leibowitz, with negligently severing appellant's right ureter and burning his leg; and charged University Hospital with negligence in furnishing a faulty and defective electrocautery or electrocoagu-

lating machine. The warranty counts charged that each of the hospitals warranted that their operating rooms were equipped with modern machines and apparatus and that their personnel were fit and capable of assisting at the operations and diagnostic procedures done on the plaintiff; that the defendant physicians impliedly warranted to do the tasks undertaken with skill and care; but that said warranties, upon which the plaintiff relied, were breached in the particulars above set forth (all of the negligence allegations being incorporated in the warranty counts). The assault counts charged Doctors Mays, Acosta-Otero and Kent, Mr. Leibowitz and University Hospital, with assault upon the plaintiff in severing his ureter without consent, and burning his leg.

The lower court held that the entire declaration sounded in tort and in its real and true sense constituted an action *ex delicto,* being in essence a suit for damages for the negligent performance of a duty imposed by law. It therefore concluded that the suit was governed by those provisions of Code, Article 75, Section 75, relating to venue of actions *ex delicto,* which provided, in effect, that in actions *ex delicto* where all of the defendants are either residents of, or carry on a regular business, employment or avocation in one county, suit must be instituted in that jurisdiction.[1] Finding that all of the defendants either resided in Baltimore City, or were there engaged in business, the court below held that they were subject to suit only in that jurisdiction.

Appellant does not question the lower court's interpretation

---

1. At the time of the lower court's decision, Section 75 read, in pertinent part, as follows:

\* \* \*

"In any action ex delicto in which all the defendants are not residents of, nor carrying on regular business in, or habitually engaged in any avocation or employment in one county, the plaintiff may, at his election, sue all said defendants in the county where the cause of action arose or sue all of the said defendants in the county where any one of the defendants reside. As used in this section the term 'county' includes 'Baltimore City.' "

\* \* \*

The Section has since been amended by Chapter 402, Acts of 1966.

of the statute with respect to the proper venue of actions *ex delicto*. He contends only that his suit, containing breach of warranty counts, was one in contract and that venue was properly governed by the provisions of Code, Article 50, Section 5, which provides:

> "In any action ex contractu in which all of the defendants are not residents of the same county, the plaintiff at his election may sue all said defendants in the county in which any one of the defendants resides or regularly does business * * *."

The thrust of appellant's argument is that breach of warranty is an essential element of every medical malpractice action where the physician-patient relationship exists; that the physician impliedly contracts or warrants to his patient that he possesses and will use a reasonable degree of care and skill in the performance of his duties; and that when the physician fails to apply this degree of care, skill and learning, he breaches his implied contract. Appellant therefore urges that his suit was properly filed in Baltimore County, where several of the defendants reside, and that since venue of the warranty counts was properly in the court there, venue of the entire suit was properly in Baltimore County.

While it may be as appellant argues that a physician impliedly contracts with those who employ him that he possesses and will exercise a reasonable degree of care, skill and learning, *Dashiell v. Griffith,* 84 Md. 363 (1896), malpractice is predicated upon the failure to exercise requisite medical skill and, being tortious in nature, general rules of negligence usually apply in determining liability.[2] *Suburban Hospital Association, Inc. v. Mewhinney,* 230 Md. 480 (1963); *Lane v. Calvert,* 215 Md. 457 (1958). Louisell and Williams, in their work "Trial of Medical Malpractice Cases," state at page 199 that most cases

---

2. The duty owed by the physician to the patient to exercise ordinary care and skill is one imposed by law, *State, Use of Janney v. Housekeeper,* 70 Md. 162 (1889), and arises regardless of whether the services are being rendered gratuitously or for a consideration, *Hoover v. Williamson,* 236 Md. 250 (1964). The duty of a hospital undertaking to provide services to a patient is not different.

today charging lack of requisite skill and care are conceived and treated as tort actions for negligence and that "the courts in suits against physicians regard negligence as the gist of the action, whatever the phraseology of the pleadings." The great majority of courts that have considered the question have concluded that medical malpractice actions sound in tort, and not in contract. See 41 Am. Jur. *Physicians and Surgeons* sec. 120; 70 C.J.S. *Physicians and Surgeons* sec. 57; *Prosser on Torts,* 3rd ed. p. 634. The cases are collected in an extensive annotation appearing at 80 ALR 2d pp. 320-360. See particularly *Kozan v. Comstock,* 270 F. 2d 839 (5th Cir. 1959), where the court, in considering the question of whether a suit against a doctor for negligent treatment sounded in tort or contract in order to determine the applicable statute of limitations, noted at pp. 844-845 that although malpractice suits are "inextricably bound up with the idea of breach of implied contract," nevertheless "we consider a malpractice action as tortious in nature whether the duty [of the physician to use due care] grows out of a contractual relation or has no origin in contract."; *Harding v. Liberty Hospital Corporation,* 171 Pac. 98 (Calif., 1918), to the effect that irrespective of allegations showing a contract for treatment, an action by a patient against a physician for injuries sustained by reason of the negligence of the physician is an action sounding in tort, not in contract; *Travis v. Bishoff,* 54 P. 2d 955 (Kan., 1936), in which it was held that although the petition was in form one for breach of contract to perform plaintiff's operation in accordance with proper surgical practice, the gravamen of the action was malpractice, which is a tort; *Swankowski v. Diethelm,* 129 N. E. 2d 182 (Ohio, 1953), where the court cites with approval the rule that notwithstanding the contractual nature of the relation between a physician and his patient, where the patient brings an action for damages for alleged breach of contract arising by reason of negligence in its performance, such action is not one on the contract but rather for malpractice, and *Seanor v. Browne,* 7 P. 2d 627 (Okla., 1932), where the court held that an action for malpractice, negligence, carelessness, and unskillfulness of a physician in treating a patient, although based upon a contract of employment, is an action in tort within the contemplation of statutes of limi-

tation, the contract of employment being merely the inducement and right of the physician to treat the patient. See also *Scott v. Board of Supervisors of Louisiana State University*, 336 F. 2d 557 (5th Cir. 1964), where the court held in effect that since actions for medical malpractice sound in tort, such an action could not be filed for breach of contract to circumvent the sovereign immunity of the state for commission of tortious acts.

It is apparent, therefore, that in determining the proper venue of appellant's suit, we must consider its substance and not its mere form. Without question, the gist or gravamen of appellant's cause of action consists in the alleged negligent acts and omissions of the defendant physicians and hospitals, which allegations have been expressly incorporated into and constitute the essence of the charges underlying and supporting the warranty counts of the declaration; in other words, appellant's suit is based entirely on the alleged negligence of the defendant physicians and hospitals. Considering the essential nature of the action, and notwithstanding the inclusion of warranty counts in appellant's declaration, we therefore conclude that the lower court was correct in ruling that the suit was governed by those provisions heretofore quoted of Code, Article 75, Section 75, controlling venue of actions *ex delicto*. While we recognize that Maryland Rule 313 authorizes joinder of tort and contract claims in any suit, we are wholly persuaded that the gravamen of the instant action so clearly sounds in tort, that its venue can only be established by considering the suit, in its entirety, as an action *ex delicto,* and not *ex contractu*.[3]

We find no merit in appellant's further contention that appellees did not furnish adequate evidence to establish their places of business or employment so as to support their motions raising preliminary objections on venue grounds. The record clearly

---

3. In so concluding, we have no occasion to consider the exact reach of Code, Article 50, Section 5, relied upon by appellant. We do note, however, that this provision is codified within the Article entitled "Joint Obligations and Joint Tenancy," and under the subtitle "Joint Obligations" and may well be circumscribed in its application to joint monetary obligations or to single contracts on which more than one person is liable. We do not, however, pass on this question.

indicates that all of the applicable evidentiary facts were stipulated between counsel, the lower court accepted the stipulation, and its opinion was based on the truth of the matters and facts so stipulated. Under these circumstances, the stipulation is binding on appellant and he obviously cannot disclaim its effect on appeal to this Court.

*Judgment affirmed, with costs.*