## MUMFORD *v.* STATON, WHALEY & PRICE, ET AL.

[No. 356, September Term, 1968.]

*Decided July 11, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, MCWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*James G. Beach, Jr.,* with whom was *Walter R. Tabler* on the brief, for appellant.

*John L. Sanford, Jr.,* with whom were *Sanford & Bolte,* and *Webb & Burnett* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

This case involves the question as to when the statute of limitations begins to run in a case arising out of an act of alleged professional malpractice against an attorney for damages resulting from reliance upon a title letter which assumed certain facts concerning the chain of title which subsequently proved to be erroneous.

Sobescus Cromleigh by deed dated June 1, 1906, and recorded among the land records of Worcester County, Maryland, in Liber F.H.P. No. 25, folios 162 and 163, acquired from the Fenwick Island Land Company, a body corporate, two parcels of land, designated as lots 5 and 6, block 21, section A, on the Fenwick Island Plat. Subsequently, by deed dated August 13, 1953, and recorded among the land records of Worcester County in Liber E.W.R. No. 61, folio 551, these two lots along with others, were conveyed by Harry Cromleigh and Irma P. Cromleigh, his wife, unto John C. Eckert and Gail Bond Eckert, his wife. This deed after describing the lots con-

veyed and after referring to the deed first above mentioned, recited:

"* * * the property hereby conveyed having, upon the death of the said Sobescus Cromleigh more than 12 years prior to the date hereof, descended unto the said Harry Cromleigh, as the son and only heir at law of the said Sobescus Cromleigh, deceased."

Sometime in 1954 the appellant, Margaret Lynch Mumford, became interested in purchasing one of the lots (lot 6, block 24, section A). She consulted John S. Whaley, Esq., a member of the law firm of Staton, Whaley and Price, appellees, with regard to the performance of a title examination of lot 6, block 24, section A. Mr. Whaley undertook the title examination and, on August 6, 1954, he advised the appellant by letter that the title examination had been completed. In the letter he stated:

"* * * The deed from Harry Cromleigh and wife unto John C. Eckert and wife dated August 13, 1953, recorded in Liber E.W.R. No. 61, folio 551, gives the information that Sobescus Cromleigh died more than twelve years prior to August 13, 1953, and that upon the death of the said Sobescus Cromleigh said property descended unto Harry Cromleigh as the son and only heir at law of the said Sobescus Cromleigh, deceased. We are not familiar with the Cromleigh family, but we see no reason why these statements of Harry Cromleigh and wife, under oath, should not be accepted as true. Due to the length of time since the said Sobescus Cromleigh died we believe that no difficulty will be caused by failure to take out letters of administration in this state on the estate of Sobescus Cromleigh, deceased. We consequently can see no reason why you should not accept deed from the Eckerts when properly executed, pay the purchase price, and have said deed recorded."

Mr. Whaley then prepared, at appellant's request, a deed from the Eckerts to appellant for the lot in question. The property was paid for and the deed conveying it, dated August 9, 1954, recorded among the land records of Worcester County, on August 11, 1954, in Liber E.W.R. No. 74, folios 116-118.

The appellant entered into the possession of the property at that time and continued in possession, without interruption, until sometime in November, 1965, when she tentatively agreed to sell the property to Jarvis Realtors, Ocean City, Maryland. At that time, it was discovered that appellant's grantors (Eckerts) had no lawful interest in Lot No. 6.

Contrary to the statement in the deed that Harry Cromleigh was the sole heir of Sobescus Cromleigh, it developed that the latter died on June 5, 1929, testate, a resident of Chester County, Pennsylvania, and that his will was properly recorded and his estate administered there. In the will, he bequeathed the sum of $1.00 to Harry G. Cromleigh and, after certain other bequests, left the residue of his estate to his wife, Prudee A. Cromleigh. Prudee A. Cromleigh survived Sobescus and it developed that the lot involved here eventually devolved upon her heirs.

On August 25, 1965, a suit was filed by the heirs of Prudee A. Cromleigh in the Circuit Court for Worcester County, Maryland, (Chancery Case No. 8402). As of the date of the filing of this equity suit no ancillary administration had ever been initiated on the estate of Sobescus Cromleigh in Worcester County, Maryland. The suit sought to have the deed from Harry G. Cromleigh and his wife, and the deed from John C. Eckert and his wife declared null and void, and have the lots conveyed thereby declared the property of the heirs of Prudee A. Cromleigh. On March 7, 1966, by decree of the Circuit Court for Worcester County, the deed prepared for the appellant by Mr. Whaley and the appellees was declared to be null and void and the appellant was required to surrender the property.

John S. Whaley, the attorney who performed the title examination for the appellant, died on September 30, 1966, while still a member of the law firm of Staton, Whaley and Price.

On March 30, 1967, appellant filed suit in the Circuit Court for Worcester County against William H. Price, as surviving partner of the firm of Staton, Whaley and Price, and against the firm, seeking to recover damages for the loss of the property. On April 17, 1967, the appellees filed their pleas to the suit, one of which was the statute of limitations. Subsequently, on November 28, 1967, upon the motion of the appellant, the case was removed to the Circuit Court for Wicomico County. On May 15, 1968, the appellees filed a motion for summary judgment based on the statute of limitations, which motion was granted. The lower court held that, while "* * * Nothing in the record in this case indicated that she [appellant] could have reasonably ascertained her status prior to the expiration of a period in excess of eleven years [the interval between August 1954, the date of the title letter and August 25, 1965, the date suit was instituted by the Cromleigh heirs];" nonetheless the statute of limitations commenced from the date of the title letter, August 6, 1954. The lower court predicated its decision on the theory that the relationship between the parties, attorney and client, was contractual in nature and that the statute of limitations had begun to run at the time the title examination was made and that the suit was therefore barred. It is from this judgment that the appellant appeals.

In the instant case we are not troubled with two situations which frequently arise in limitations cases. One is the problem created by the difference of the limitations periods applied in some jurisdictions to actions *ex delicto* as contrasted with actions *ex contractu*. In Louisiana, for example, the limitations period on tort actions is one year, whereas the limitations period on contract actions is ten years. See *Marchand v. Miazza*, 151 So. 2d 372 (La.

1963) ; *Alter v. Michael,* 413 P. 2d 153 (Cal. 1966) ; *Sellers v. Noah,* 95 So. 167 (Ala. 1923). Where different limitations periods do exist, there is accordingly an additional reason for distinguishing actions sounding in tort from those based on contract. In Maryland the period for both actions in tort and on contract is three years. Code (1968 Repl. Vol.) Article 57, § 1.

The other area which need give us no concern in the case at bar is the consideration as to when the damages may have matured, because, even if we were of a mind to consider this contingency as the event which started the running of limitations (the cases in Maryland have not gone beyond the discovery doctrine), in the instant case the discovery of the alleged negligence and the maturation of harm were simultaneous.

Code, Article 57, § 1, provides that "All *actions* of account, actions of assumpsit, or on the case, * * * *shall be commenced, * * * within three years from the time the cause of action accrued; * * *.*" (Emphasis supplied.)

In the recent case of *Mattingly v. Hopkins,* 254 Md. 88, 253 A. 2d 904 (1969) this Court had occasion to consider the question as to when the statute of limitations began to run in a case involving a faulty survey of land. In that case Mattingly, the property owner, had procured a survey from the surveyor, appellee, in December of 1953. In the summer of 1959 while in the process of laying out a tennis court, Mattingly discovered what appeared to be a discrepancy between the plats prepared by the surveyor and the physical markers which the surveyor had placed on the ground. In the summer of 1960 the surveyor appeared on the premises and corrected the error. However, Mattingly had commenced to sell off lots in 1953, the dimensions of which were predicated on the faulty survey. In December of 1962 and again in 1964, the grantees of the re-subdivided lots brought suit against Mattingly. These suits resulted in a loss of footage to Mattingly, plus the incurring on his part of considerable expense. Mattingly filed suit against the surveyor in Oc-

tober of 1964 alleging, among other things, a negligent breach of contract. The surveyor raised the defense of limitations claiming that action should have been brought within three years after the survey was made in 1952, or at the latest, within three years after the discovery of the error in 1959. This Court applying the discovery theory reviewed the applicable law on limitations in Maryland, stating:

"Like most general rules of law, those pertaining to 'limitations' become less than profound when an attempt is made to apply them to specific cases. Much has been written as to when 'limitations' should start to run. Some courts have held the cause of action accrues when the defendant commits his wrong, others when the plaintiff discovers the wrong, and still others have held that it does not accrue until the maturation of harm. Sometimes the happening of the wrong, the knowledge of it and the maturation of the harm are simultaneous. When this occurs the recognition of the accrual of the cause of action is simple, when these elements happen sequentially it can become complex. Furthermore, there are nuances of difference in the accrual of the cause of action in cases arising out of actions *ex contractu,* as distinguished from actions *ex delicto,* and a further hybridization of actions arising out of professional malpractice and otherwise. An exhaustive discourse on the problems which emerge from the various combinations of events which spell out the accrual of the cause of action, is found in 63 Harv. L. Rev. 1177 (1950) and in 28 Md. L. Rev. 47 (1968). Both articles cite numerous cases and the trend of decisions. In 28 Md. L. Rev. 47, beginning at 61 there is a concise summary of 'The Situation in Maryland.' See also *Prosser, The Law of Torts* (1964) § 30.

"However, we think the most viable articulation of the law, in so far as affording a solution to the case at bar is concerned, is found in *Waldman v. Rohrbaugh,* 241 Md. 137, 215 A. 2d 825 (1966). * * * In reading *Waldman,* it is quite apparent that in Maryland we have adopted the 'discovery rule' in medical malpractice cases, originally laid down in *Hahn v. Claybrook,* 130 Md. 179, 100 A. 83 (1917), but which rule had not been as clearly defined in *Hahn* as it subsequently was in *Waldman.* In *Waldman* the Court stated that the statute of limitations commences to run '* * * from the moment of discovery, the moment he knows or should know he has a cause of action, within which to sue.' (*Id.* at 145)." *Id.* at 92-94

In the case at bar we are dealing with the question of limitations with reference to the alleged negligent action of an attorney in the performance of a title search to real property for his client. We are fully aware that the majority view is that followed by the lower court and as expressed in 18 A.L.R.3d 978, wherein it is stated:

"The courts have held that the statute of limitations commences to run against an action arising out of the negligence of an attorney in the examination of title from the time the attorney makes an erroneous report to his client as to the status of the title to the property or delivers an abstract of title which is incomplete or contains errors." *Id.* at 1012.

See also 5 A.L.R. 1389, 1395. 1 Am. Jur. 2d "Abstracts of Title," § 24; 7 Am. Jur. 2d "Attorney at Law," § 186.

The same general rule is applied by most jurisdictions with regard to the negligent or intentional misconduct of an attorney generally in his professional capacity:

"It is said in 17 R.C.L. Limitation of Actions, p. 766, § 132, quoted in *Sullivan v. Stout* (N. J.)

(reported herewith) [overruled by *New Market Poultry Farms, Inc. v. Fellows,* 241 A. 2d 633 (N. J. 1967) discussed later in this opinion] ante, 211, that 'An action by a client for the misfeasance or non-feasance of his attorney is based on the latter's breach of duty, and not on the consequential damages subsequently resulting. In such cases the general rule is that in the absence of fraudulent concealment by the attorney, the statute begins to run at the time of the neglect or misconduct and not from the time when the wrong is discovered or the consequential damages are felt.' " 118 A.L.R. 215.

The duties of an attorney in performing a title search, and the nature of the cause of action which may be brought against him for the negligent breach of his duty in this regard, were dealt with by this Court in *Reamer v. Kessler,* 233 Md. 311, 196 A. 2d 896 (1964), wherein Chief Judge Brune writing for the Court stated:

> "In this State it has been held that the obligation of an attorney or abstracter examining and certifying title is *contractual in nature,* though it has been recognized in two cases that it has ordinarily been enforced by an action on the case alleging negligence in the discharge of the professional duty of an attorney. See *Watson v. Calvert Building and Loan Ass'n.,* 91 Md. 25, at 33, 45 A. 879; *Wlodarek v. Thrift,* 178 Md. 453, at 468, 13 A. 2d 774; and *Corcoran v. Abstract & Title Co. of Md., Inc.,* 217 Md. 633, at 637, 143 A. 2d 808 (involving an abstract company, not an attorney, but quoting from *Watson).* See also *Kendall v. Rogers,* 181 Md. 606, 31 A. 2d 312, * * *." (Emphasis supplied.) *Id.* at 315-316.

It should be noted that although the opinion in *Reamer* classifies an action for professional malpractice against

an attorney as one in contract, it also recognizes that the gravamen is the negligent breach of the contractual duty.

Also, in the early case of *Watson v. Calvert Bldg. Assn.*, 91 Md. 25, 45 A. 879 (1900), this Court after reciting the duties incumbent upon an attorney in making a title search, stated:

> "* * * This responsibility of the attorney, although ordinarily *enforced by an action of case for negligence in the discharge of his professional duties,* in reality rests upon his employment by the client and is contractual in its nature. Before the attorney can be made liable, it must appear that the loss for which he is sought to be held arose from his failure or neglect to discharge some duty which was fairly within the purview of his employment." (Emphasis supplied.) *Id.* at 33.

It should be noted that this Court in *Watson,* although characterizing the attorney-client relationship as contractual, nevertheless, recognized that the breach of the contractual duty smacked of negligence. We think this is important because in the case at bar, as in *Watson,* although recognizing the relationship between attorney and client to be in essence contractual, none the less, we think the fact that liability is grounded on the negligent breach of duty permits the application of legal principles usually reserved to the field of torts, such as the discovery rule with regard to limitations. Cf. *Benson v. Mays,* 245 Md. 632, 227 A. 2d 220 (1967), a medical malpractice case, wherein, for the purposes of determining venue, we stated that the action sounded in tort rather than contract, although the declaration contained separate counts in negligence and for breach of warranty.

Nor do we intend that anything that is stated in this opinion should detract from the following statement of our predecessors in *Wlodarek v. Thrift,* 178 Md. 453, 13 A. 2d 774 (1940):

"It seems generally accepted that the liability of the defendants as attorneys to examine and pass upon a title to land is founded in contract and not on tort, and, therefore, does not, as a general rule, extend beyond the person by whom they were so employed. So, when the party with whom the contract is made is the purchaser, and he causes the title to the land, after paying the purchase money, to be conveyed by the vendor to his nominee, the subsequent loss and injury sustained by such nominee and his successors in the title, by reason of any defect in or absence of title, may not be recovered of the attorneys by such third parties as damages. *Warvelle on Abstracts and Examination of Titles*, sec. 619, p. 656; *Mechem on Agency*, (2nd Ed.), sec. 2213." *Id.* at 468.

In the instant case the suit is between the client and the attorney and the law firm of which he was a partner, on the certificate of title made by the attorney to his client, so the contractual obligation comes within the scope of the contractual liability set forth in the above quotation from *Wlodarek*. As we have previously stated, the question before us is the application of the proper theory regarding limitations. We also recognize that in *Wlodarek*, this Court by way of dictum stated, "* * * The breach of the contract is clear, and the right of action accrued immediately on the breach." *Id.* at 467. However, although *Wlodarek* involved a suit on a defective title certificate, the issue of limitations was not before the Court.

This Court has never before had occasion to consider the question, *per se*, as to when the statute of limitations begins to run in a malpractice action against an attorney, that is, whether it starts at the date the negligent act is committed or upon the discovery by the client of the negligent action.

However, in *Mattingly, supra,* wherein the negligent act of a surveyor was involved, we made the observation:

"We see no basic distinction between the application of the 'discovery rule' in a medical malpractice case and in the instant case, which assuming that engineering is a profession, is in essence a professional malpractice situation." *Id.* at 94-95

Again, we would note that whether the action for professional malpractice be brought in contract or in trespass on the case, in order to establish liability, a negligent breach of duty must be proved.

The discovery rule applied by this Court in *Mattingly,* was also employed by the Supreme Court of New Jersey in *New Market Poultry Farms, Inc. v. Fellows,* 241 A. 2d 633 (1967), a case wherein the Court reversed the rationale of *Sullivan v. Stout,* 120 N.J.L. 304, 199 A. 1 (1938), wherein it was held in a suit against an attorney for negligence, in making a title search, that limitations commenced to run at the *time of the commission* of the negligent act. *Sullivan, supra,* was the subject of the annotation in 118 A.L.R. 211. In *New Market Poultry Farms,* the Court also presented with a suit on a faulty survey, stated in its opinion:

"We are here confronted with the increasingly frequent inquiry as to the date from which the Statute of Limitations commences to run, i.e., when the cause of action accrues. See e.g., *Rosenau v. City of New Brunswick,* 51 N. J. 130, 238 A. 2d 169 (1968) affirming 93 N. J. Super. 49, 224 A. 2d 689 (App. Div. 1966); *Fernandi v. Strully,* 35 N. J. 434, 173 A. 2d 277 (1961); *Rothman v. Silber,* 90 N. J. Super. 22, 216 A. 2d 18 (App. Div. 1966) certification denied 46 N. J. 538, 218 A. 2d 405.

"If the date the survey was undertaken or

the calculation delivered is to be considered the date of critical importance, the statute has long since tolled under N.J.S. 2A:14-1, N.J.S.A. Plaintiff's argument in the matter *sub judice* is that although the breach of duty occurred in 1952, the resulting actual damage was not discovered, and indeed may not have occurred, until 1963 and that the statute should begin to run from the latter date. Plaintiff recognizes that under almost identical circumstances the courts of this State have held that the statute 'begins to run from the time of the occurrence of the breach of duty.' *Gogolin v. Williams*, 91 N.J.L. 266, 102 A. 667 (E. & A. 1917). See also *Sullivan v. Stout*, 120 N.J.L. 304, 199 A. 1 (E. & A. 1938) (which concerns a suit against an attorney for negligently preparing a title report). Plaintiff frankly admits that the trial judge did not commit legal error if the above two cases are to be regarded as continuing and binding precedent. However, plaintiff argues that the modern development of the law has established a trend away from such a harsh and inequitable result and suggests a change of approach to the problem relying principally upon *Fernandi v. Strully*, 35 N. J. 434, 173 A. 2d 277 (1961). In relation to *Gogolin, supra*, 91 N.J.L. 266, 102 A. 667 and *Sullivan, supra*, 120 N.J.L. 304, 199 A. 1, this Court said in *Fernandi, supra*, [a medical malpractice case] 35 N. J. at p. 450, 173 A. 2d at 286:

"* * * For present purposes we need not question these instances for we are satisfied that *the case at hand falls within a special grouping or 'class of cases'* (1 *Wood, supra*, at pp. 685, 686) *where the period of limitations may and should fairly and justly be said to begin to run when the plaintiff knows or has any reason to know about the foreign object and*

*the existence of the cause of action based upon its presence;* * * *.' "* (Emphasis in original) *Id.* at 635.

* * *

"* * * The circumstances so portrayed do not permit a suggestion that Mrs. Pack knowingly slept on her rights but to the contrary establish that she brought suit expeditiously after she discovered her alleged actual damage. Accordingly we hold that under the facts and circumstances as presented, the motion for summary judgment should have been denied. Such a result, as noted, is consistent with *Fernandi* and in harmony with the trend in other jurisdictions. See *Fort Myers Seafood Packers, Inc. v. Steptoe and Johnson,* 381 F. 2d 261 (D. C. Cir. 1967) ; *Yoshizaki v. Hilo Hospital,* 433 P. 2d 220 (Sup. Ct. Hawaii 1967) ; *Chrischilles v. Griswold,* 150 N.W.2d 94 (Sup. Ct. Iowa 1967) ; *Price v. Holmes,* 198 Kan. 100, 422 P. 2d 976 (Sup. Ct. 1967) ; *Marchand v. Miazza,* 151 So. 2d 372 (Ct. App. La. 1963) ; *White v. Schnoebelen,* 91 N. H. 273, 18 A. 2d 185 (Sup. Ct. 1941) ; *Bland v. Smith,* 197 Tenn. 683, 277 S.W. 2d 377 (Sup. Ct. 1955) ; Lillach, Malpractice Statute of Limitations in New York and Other Jurisdictions, 47 Cornell L. Q. 339, esp. 357-360 (1962)." *Id.* at 636-637.

The case of *Fernandi v. Strully,* 35 N. J. 434, 173 A. 2d 277 (1961), cited and discussed in *New Market Poultry Farms* was a medical malpractice case wherein the Court applied the discovery doctrine which was followed in *New Market Poultry Farms.* It is clear that New Jersey has now adopted the discovery doctrine for any type of professional malpractice case, whether it be a case involving medical malpractice or otherwise.

A similar trend is to be found in the federal cases. In *Fort Myers Seafood Packers, Inc. v. Steptoe and John-*

*son,* 381 F. 2d 261 (D. C. Cir. 1967) a case also cited in *New Market Poultry Farms,* the defendant attorney was directed by a client to send the plaintiff a proposed contract to be used in connection with a business venture in Venezuela. This took place in May, 1952. The plaintiff relied on the defendant's misstatement of the Venezuelan law relating to the registry of fishing vessels and his boats were subsequently impounded while shrimping in Venzeulan territorial waters on July 25, 1962. Suit was filed on July 22, 1965. The District Court held that a cause of action accrued on the earlier date and granted the defendant's motion for summary judgment. In reversing, the Circuit Court of Appeals said:

> "We disagree also with the District Court's ruling that appellant's suit, filed July 22, 1965, was barred by the Statute of Limitations. With exceptions not pertinent here, the District of Columbia statute requires actions to be brought within three years 'from the time the right to maintain action accrues.' D. C. Code (1961 ed. Supp. V 1966) § 12-301, 77 Stat. 510. In ordinary negligence actions, this means the time when the plaintiff suffers injury. Thus we said in *Hanna v. Fletcher* 'The action against Gichner plainly is based on negligence, sounds in tort, and did not accrue until injury resulted from the alleged negligence.' 97 U. S. App. D.C. 310, 313, 231 F. 2d 469, 472, 58 A.L.R.2d 847, cert. denied, *Gichner Iron Works, Inc. v. Hanna,* 351 U. S. 989, 76 S. Ct. 1051, 100 L. Ed. 1501 (1956). Several state courts have adopted a special rule that time begins to run against a claim for malpractice when the defendant does the act that afterwards results in injury. Other courts have applied the general rule that time begins to run when the plaintiff suffers injury. The District Court chose the special rule. *We see no good reason for drawing such a distinction*

*between malpractice suits and other negligence actions.* The impounding of the boats might have been found to be an injury that resulted from appellees' erroneous legal advice. Since the suit was filed within three years, we think it was timely." (Emphasis supplied.) *Id.* at 262.

In *Marchand v. Miazza,* 151 So. 2d 372 (La. 1963), the Court of Appeals of Louisiana, after noting that a claim against an attorney might sound in contract or tort, stated:

"* * * Treating it as one predicated upon tort, we do not think the one year would begin to run until the damages have been shown to exist. * * *." *Id.* at 375.

In a malpractice suit involving an accountant, the Supreme Court of Texas in *Atkins v. Crosland,* 417 S.W.2d 150 (1967) seemingly abandoned the date of the negligent act test as the time when limitations began to run and adopted the date of the injury as the event which triggered the running of the statute. There, the plaintiff, a businessman, employed the defendant, an accountant, to prepare his income tax returns. If a cash method of accounting had been employed, plaintiff's tax liability for 1960 would have been $20,627.69. Under the accrual method of accounting actually used by the defendant, plaintiff's tax liability for 1960 amounted to $8,340.39. In using the accrual method, however, the defendant failed to obtain the required permission from Internal Revenue. This resulted in an assessment in 1961 of $12,-287.32, the difference in amount of tax between the two methods. Suit had been filed on September 30, 1963. The applicable statute of limitations was two years. The trial court granted defendant's motion for summary judgment which was based on a limitations defense and the Court of Civil Appeals affirmed. The Supreme Court of Texas reversed, holding that the plaintiff had sustained no injury until the assessment in 1961, and therefore the statute of limitations began to run from that date.

In reaching its decision in *Atkins* the Texas Court departed from the precedent followed in *Crawford v. Davis*, 148 S.W.2d 905, (Tex. Civ. App. 1941), a case involving an action against an attorney for malpractice consisting of his delay in filing a suit and in which case the old rule was applied, namely, that the period of limitations began to run at the time of the commission of the negligent act and not when the client became aware of it. The Court in *Crawford* adopted the principle that:

> "* * * A cause of action based upon a consummated legal wrong accrues immediately *regardless of whether or not the injured party has knowledge of the wrong. Houston Waterworks v. Kennedy,* 70 Tex. 233, 8 S. W. 36; * * *." (Emphasis supplied.) *Id.* at 907.

In *Atkins,* the Court in effect repudiated the proposition that the happening of the negligent act starts the running of limitations, espoused in *Crawford,* stating:

> "The defendant also relies on *Crawford v. Davis*, 148 S.W.2d 905 (Tex. Civ. App. 1941, no writ hist.). In that case suit was brought against an attorney for his negligent failure to properly institute suit on a promissory note before it became barred by the statute of limitations. We have examined that case and determined that it contains language which conflicts with the holding we have made in the present case. Therefore, the language in *Crawford* that is in conflict with our holding here is expressly disapproved." *Id.* at 154.

As early as 1912 the Supreme Court of Idaho in the case of *Hillock v. Idaho Title & T. Co.*, 126 P. 612, applied the discovery test to an action on a faulty title certificate, stating:

> "* * * The question, however, confronting us is a new one in this state, and we feel that we

> would rather announce a rule and place a construction on a statute which to us seems reasonable and at the same time is in consonance with the plainest dictates of justice, even though in doing so we may subject ourselves to the charge of holding against the weight of the adjudicated cases." *Id.* at 616.

The author of the casenote at 28 Md. L. Rev. 47, in expressing his hope that the courts generally will "establish viable rules which apply uniformly to all professional malpractice cases within their jurisdiction," stated, "* * * [I]t is to be hoped that as other courts re-examine their approaches to statute of limitations determinations, they will uniformly apply the discovery test [where applicable] to all cases of professional malpractice and thereby avoid reaching conflicting results." *Id.* at 64.

In view of our opinion in *Mattingly,* as well as what our predecessors did in *Hahn, supra,* and *Waldman, supra,* we cannot now make favored litigants of attorneys by applying a less stringent rule to members of the legal profession than to doctors or surveyors. It would appear that in recent years the trend has been for courts, in applying limitations to professional malpractice cases, not to become too concerned as to whether the action is grounded in contract or tort, but rather to focus attention on the fact that it is the failure to perform one's professional duties with reasonable skill and diligence which gives rise to the cause of action, whether it be a negligent breach of contract or otherwise. Since such actions share the common gravamen of negligence, limitations should be applied in the same manner to all suits for professional malpractice, even though the relationship between the parties be contractual, as in the case at bar.

It should be understood that what we have stated in this opinion pertains to a professional malpractice suit sounding in negligence and does not alter the principle of the law of contracts that, in the absence of fraud, it is generally held that the statute of limitations for breach

of contract begins to run from the date of the alleged breach and not from the date the alleged wrong is discovered by the plaintiff. *Killen v. Geo. Wash. Cemetery,* 231 Md. 337 at 343, 190 A. 2d 247 (1963).

It is to be remembered that the appeal here concerns a summary judgment bottomed upon the statute of limitations and not a judgment resulting from a plenary trial. A trial of the case on its merits may well produce a different result.

In view of what we have stated in this opinion, we reverse the lower court and remand the case for further proceedings.

> *Judgment reversed, case remanded for further proceedings, appellees to pay costs.*